(Slip Opinion) OCTOBER TERM, 2012 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## DESCAMPS *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 11–9540. Argued January 7, 2013—Decided June 20, 2013

The Armed Career Criminal Act (ACCA) increases the sentences of certain federal defendants who have three prior convictions "for a violent felony," including "burglary, arson, or extortion." 18 U. S. C. §924(e). To determine whether a past conviction is for one of those crimes, courts use a "categorical approach": They compare the statutory elements of a prior conviction with the elements of the "generic" crime—*i.e.,* the offense as commonly understood. If the statute's elements are the same as, or narrower than, those of the generic offense, the prior conviction qualifies as an ACCA predicate. When a prior conviction is for violating a "divisible statute"—one that sets out one or more of the elements in the alternative, *e.g.,* burglary involving entry into a building *or* an automobile—a "modified categorical approach" is used. That approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative element formed the basis of the defendant's prior conviction.

Petitioner Descamps was convicted of being a felon in possession of a firearm. The Government sought an ACCA sentence enhancement, pointing to Descamps' three prior convictions, including one for burglary under California Penal Code Ann. §459, which provides that a "person who enters" certain locations "with intent to commit grand or petit larceny or any felony is guilty of burglary." In imposing an enhanced sentence, the District Court rejected Descamps' argument that his §459 conviction cannot serve as an ACCA predicate because §459 goes beyond the "generic" definition of burglary. The Ninth Circuit affirmed, holding that its decision in *United States* v. *Aguila-Montes de Oca*, 655 F. 3d 915, permits the application of the modified categorical approach to a prior conviction under a statute that is

"categorically broader than the generic offense." It found that Descamps' §459 conviction, as revealed in the plea colloquy, rested on facts satisfying the elements of generic burglary.

*Held*: The modified categorical approach does not apply to statutes like §459 that contain a single, indivisible set of elements. Pp. 5−23.

(a) This Court's caselaw all but resolves this case. In *Taylor* v. *United States*, 495 U. S. 575, and *Shepard* v. *United States*, 544 U. S. 13, the Court approved the use of a modified categorical approach in a "narrow range of cases" in which a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction. Because a sentencing court cannot tell, simply by looking at a divisible statute, which version of the offense a defendant was convicted of, the court is permitted to consult extra-statutory documents—but only to assess whether the defendant was convicted of the particular "statutory definition" that corresponds to the generic offense. *Nijhawan* v. *Holder*, 557 U. S. 29, and *Johnson* v. *United States,* 559 U. S. 133, also emphasized this elements-based rationale for the modified categorical approach. That approach plays no role here, where the dispute does not concern alternative elements but a simple discrepancy between generic burglary and §459. Pp. 5−10.

(b) The Ninth Circuit's *Aguila-Montes* approach turns an elements-based inquiry into an evidence-based one, asking not whether "statutory definitions" necessarily require an adjudicator to find the generic offense, but whether the prosecutor's case realistically led the adjudicator to find certain facts. *Aguila-Montes* has no roots in this Court's precedents. In fact, it subverts those decisions, conflicting with each of the rationales supporting the categorical approach and threatening to undo all its benefits. Pp. 10–19.

(1) *Taylor*'s elements-centric categorical approach comports with ACCA's text and history, avoids Sixth Amendment concerns that would arise from sentencing courts' making factual findings that properly belong to juries, and averts "the practical difficulties and potential unfairness of a factual approach." 495 U. S., at 601.

ACCA's language shows that Congress intended sentencing courts "to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Id.,* at 600. The Ninth Circuit's approach runs headlong into that congressional choice. Instead of reviewing extra-statutory documents only to determine which alternative element was the basis for the conviction, the Circuit looks to those materials to discover what the defendant actually did.

Under ACCA, the sentencing court's finding of a predicate offense indisputably increases the maximum penalty. Accordingly, that find-

Syllabus

ing would (at least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction. That is why *Shepard* refused to permit sentencing courts to make a disputed determination about what facts must have supported a defendant's conviction. 544 U. S., at 25 (plurality opinion). Yet the Ninth Circuit flouts this Court's reasoning by authorizing judicial factfinding that goes far beyond the recognition of a prior conviction.

The Ninth Circuit's decision also creates the same "daunting" difficulties and inequities that first encouraged the adoption of the categorical approach. Sentencing courts following *Aguila-Montes* would have to expend resources examining (often aged) documents for evidence that a defendant admitted, or a prosecutor showed, facts that, although unnecessary to the crime of conviction, satisfied an element of the relevant generic offense. And the *Aguila-Montes* approach would also deprive many defendants of the benefits of their negotiated plea deals. Pp. 12–16.

(2) In defending *Aguila-Montes*, the Ninth Circuit denied any real distinction between divisible and indivisible statutes extending further than the generic offense. But the Circuit's efforts to imaginatively reconceive all indivisible statutes as divisible ones are unavailing. Only divisible statutes enable a sentencing court to conclude that a jury (or judge at a plea hearing) has convicted the defendant of every element of the generic crime. Pp. 16−19.

(c) The Government offers a slightly different argument: It contends that the modified categorical approach should apply where, as here, the mismatch of elements between the crime of conviction and the generic offense results not from a missing element but from an element's overbreadth. But that distinction is malleable and manipulable. And in any event, it is a distinction without a difference. Whether the statute of conviction has an overbroad or missing element, the problem is the same: Because of the mismatch in elements, a person convicted under that statute is never convicted of the generic crime. Pp. 19−22.

(d) Because generic unlawful entry is not an element, or an alternative element of, §459, a conviction under that statute is never for generic burglary. Descamps' ACCA enhancement was therefore improper. Pp. 22–23.

466 Fed. Appx. 563, reversed.

KAGAN, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, GINSBURG, BREYER, and SOTOMAYOR, JJ., joined. KENNEDY, J., filed a concurring opinion. THOMAS, J., filed an opinion concurring in the judgment. ALITO, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 11–9540

## MATTHEW ROBERT DESCAMPS, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 20, 2013]

JUSTICE KAGAN delivered the opinion of the Court.

The Armed Career Criminal Act (ACCA or Act), 18 U. S. C. §924(e), increases the sentences of certain federal defendants who have three prior convictions "for a violent felony," including "burglary, arson, or extortion." To determine whether a past conviction is for one of those crimes, courts use what has become known as the "categorical approach": They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime—*i.e.,* the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense.

We have previously approved a variant of this method— labeled (not very inventively) the "modified categorical approach"—when a prior conviction is for violating a socalled "divisible statute." That kind of statute sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other

(say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime.

This case presents the question whether sentencing courts may also consult those additional documents when a defendant was convicted under an "indivisible" statute— *i.e.,* one not containing alternative elements—that criminalizes a broader swath of conduct than the relevant generic offense. That would enable a court to decide, based on information about a case's underlying facts, that the defendant's prior conviction qualifies as an ACCA predicate even though the elements of the crime fail to satisfy our categorical test. Because that result would contravene our prior decisions and the principles underlying them, we hold that sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements.

I

Petitioner Michael Descamps was convicted of being a felon in possession of a firearm, in violation of 18 U. S. C. §922(g). That unadorned offense carries a maximum penalty of 10 years in prison. The Government, however, sought an enhanced sentence under ACCA, based on Descamps' prior state convictions for burglary, robbery, and felony harassment.

ACCA prescribes a mandatory minimum sentence of 15 years for a person who violates §922(g) and "has three previous convictions . . . for a violent felony or a serious

drug offense." §924(e)(1). The Act defines a "violent felony" to mean any felony, whether state or federal, that "has as an element the use, attempted use, or threatened use of physical force against the person of another," or that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." §924(e)(2)(B).

Descamps argued that his prior burglary conviction could not count as an ACCA predicate offense under our categorical approach. He had pleaded guilty to violating California Penal Code Ann. §459 (West 2010), which provides that a "person who enters" certain locations "with intent to commit grand or petit larceny or any felony is guilty of burglary." That statute does not require the entry to have been unlawful in the way most burglary laws do. Whereas burglary statutes generally demand breaking and entering or similar conduct, California's does not: It covers, for example, a shoplifter who enters a store, like any customer, during normal business hours. See *People* v. *Barry*, 94 Cal. 481, 483–484, 29 P. 1026, 1026–1027 (1892). In sweeping so widely, the state law goes beyond the normal, "generic" definition of burglary. According to Descamps, that asymmetry of offense elements precluded his conviction under §459 from serving as an ACCA predicate, whether or not his own burglary involved an unlawful entry that could have satisfied the requirements of the generic crime.

The District Court disagreed. According to the court, our modified categorical approach permitted it to examine certain documents, including the record of the plea colloquy, to discover whether Descamps had "admitted the elements of a generic burglary" when entering his plea. App. 50a. And that transcript, the court ruled, showed that Descamps had done so. At the plea hearing, the prosecutor proffered that the crime "'involve[d] the breaking and entering of a grocery store,'" and Descamps failed

to object to that statement. *Ibid.* The plea proceedings, the District Court thought, thus established that Descamps' prior conviction qualified as a generic burglary (and so as a "violent felony") under ACCA. Applying the requisite penalty enhancement, the court sentenced Descamps to 262 months in prison—more than twice the term he would otherwise have received.

The Court of Appeals for the Ninth Circuit affirmed, relying on its recently issued decision in *United States* v. *Aguila-Montes de Oca*, 655 F. 3d 915 (2011) (en banc) (*per curiam*). There, a divided en banc court took much the same view of the modified categorical approach as had the District Court in this case. The en banc court held that when a sentencing court considers a conviction under §459—or any other statute that is "categorically broader than the generic offense"—the court may scrutinize certain documents to determine the factual basis of the conviction. See *id.,* at 940. Applying that approach, the Court of Appeals here found that Descamps' plea, as revealed in the colloquy, "rested on facts that satisfy the elements of the generic definition of burglary." 466 Fed. Appx. 563, 565 (2012).

We granted certiorari, 567 U. S. ___ (2012), to resolve a Circuit split on whether the modified categorical approach applies to statutes like §459 that contain a single, "indivisible" set of elements sweeping more broadly than the corresponding generic offense.[1] We hold that it does not, and so reverse.

---

[1] Compare, *e.g.,* 466 Fed. Appx. 563, 565 (CA9 2012) (case below) (applying the modified categorical approach to §459); *United States* v. *Armstead*, 467 F. 3d 943, 947–950 (CA6 2006) (applying that approach to a similar, indivisible statute), with, *e.g., United States* v. *Beardsley*, 691 F. 3d 252, 268–274 (CA2 2012) (holding that the modified categorical approach applies only to divisible statutes); *United States* v. *Giggey*, 551 F. 3d 27, 40 (CA1 2008) (en banc) (same).

## II

Our caselaw explaining the categorical approach and its "modified" counterpart all but resolves this case. In those decisions, as shown below, the modified approach serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction. So understood, the modified approach cannot convert Descamps' conviction under §459 into an ACCA predicate, because that state law defines burglary not alternatively, but only more broadly than the generic offense.

We begin with *Taylor* v. *United States*, 495 U. S. 575 (1990), which established the rule for determining when a defendant's prior conviction counts as one of ACCA's enumerated predicate offenses (*e.g.*, burglary). *Taylor* adopted a "formal categorical approach": Sentencing courts may "look only to the statutory definitions"—*i.e.,* the elements—of a defendant's prior offenses, and *not* "to the particular facts underlying those convictions." *Id.,* at 600. If the relevant statute has the same elements as the "generic" ACCA crime, then the prior conviction can serve as an ACCA predicate; so too if the statute defines the crime more narrowly, because anyone convicted under that law is "necessarily . . . guilty of all the [generic crime's] elements." *Id.,* at 599. But if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form. The key, we emphasized, is elements, not facts. So, for example, we held that a defendant can receive an ACCA enhancement for burglary only if he was convicted of a crime having "the basic elements" of generic burglary—*i.e.,* "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Ibid.* And indeed, we indicated that the very statute at

issue here, §459, does not fit that bill because "California defines 'burglary' so broadly as to include shoplifting." *Id.,* at 591.

At the same time, *Taylor* recognized a "narrow range of cases" in which sentencing courts—applying what we would later dub the "modified categorical approach"—may look beyond the statutory elements to "the charging paper and jury instructions" used in a case. *Id.,* at 602. To explain when courts should resort to that approach, we hypothesized a statute with alternative elements—more particularly, a burglary statute (otherwise conforming to the generic crime) that prohibits "entry of an automobile as well as a building." *Ibid.* One of those alternatives (a building) corresponds to an element in generic burglary, whereas the other (an automobile) does not. In a typical case brought under the statute, the prosecutor charges one of those two alternatives, and the judge instructs the jury accordingly. So if the case involves entry into a building, the jury is "actually required to find all the elements of generic burglary," as the categorical approach demands. *Ibid.* But the statute alone does not disclose whether that has occurred. Because the statute is "divisible"—*i.e.,* comprises multiple, alternative versions of the crime—a later sentencing court cannot tell, without reviewing something more, if the defendant's conviction was for the generic (building) or non-generic (automobile) form of burglary. Hence *Taylor* permitted sentencing courts, as a tool for implementing the categorical approach, to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction.

In *Shepard* v. *United States*, 544 U. S. 13 (2005), the hypothetical we posited in *Taylor* became real: We confronted a Massachusetts burglary statute covering entries into "boats and cars" as well as buildings. 544 U. S., at 17. The defendant there pleaded guilty to violating the stat-

ute, and we first confirmed that *Taylor*'s categorical approach applies not just to jury verdicts, but also to plea agreements. That meant, we held, that a conviction based on a guilty plea can qualify as an ACCA predicate only if the defendant "necessarily admitted [the] elements of the generic offense." *Id.,* at 26. But as we had anticipated in *Taylor*, the divisible nature of the Massachusetts burglary statute confounded that inquiry: No one could know, just from looking at the statute, which version of the offense Shepard was convicted of. Accordingly, we again authorized sentencing courts to scrutinize a restricted set of materials—here, "the terms of a plea agreement or transcript of colloquy between judge and defendant"—to determine if the defendant had pleaded guilty to entering a building or, alternatively, a car or boat. *Ibid.* Yet we again underscored the narrow scope of that review: It was not to determine "what the defendant and state judge must have understood as the factual basis of the prior plea," but only to assess whether the plea was to the version of the crime in the Massachusetts statute (burglary of a building) corresponding to the generic offense. *Id.,* at 25–26 (plurality opinion).

Two more recent decisions have further emphasized the elements-based rationale—applicable only to divisible statutes—for examining documents like an indictment or plea agreement. In *Nijhawan* v. *Holder*, 557 U. S. 29 (2009), we discussed another Massachusetts statute, this one prohibiting "'Breaking and Entering at Night'" in any of four alternative places: a "building, ship, vessel, or vehicle." *Id.,* at 35. We recognized that when a statute so "refer[s] to several different crimes," not all of which qualify as an ACCA predicate, a court must determine which crime formed the basis of the defendant's conviction. *Ibid.* That is why, we explained, *Taylor* and *Shepard* developed the modified categorical approach. By reviewing the extra-statutory materials approved in those cases, courts

could discover "which statutory phrase," contained within a statute listing "several different" crimes, "covered a prior conviction." 557 U. S., at 41. And a year later, we repeated that understanding of when and why courts can resort to those documents: "[T]he 'modified categorical approach' that we have approved permits a court to determine which statutory phrase was the basis for the conviction." *Johnson* v. *United States*, 559 U. S. 133, 144 (2010) (citation omitted).

Applied in that way—which is the only way we have ever allowed—the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's. All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates "several different . . . crimes." *Nijhawan,* 557 U. S., at 41. If at least one, but not all of those crimes matches the generic version, a court needs a way to find out which the defendant was convicted of. That is the job, as we have always understood it, of the modified approach: to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense.[2]

_____

[2] The dissent delves into the nuances of various States' laws in an effort to cast doubt on this understanding of our prior holdings, arguing that we used the modified categorical approach in cases like *Taylor*, *Shepard,* and *Johnson* "in relation to statutes that may not have been divisible" in the way that we have just described. *Post*, at 5 (ALITO, J.). But if, as the dissent claims, the state laws at issue in those cases set out "merely alternative means, not alternative elements" of an offense, *post*, at 7, that is news to us. And more important, it would have been

The modified approach thus has no role to play in this case. The dispute here does not concern any list of alternative elements. Rather, it involves a simple discrepancy between generic burglary and the crime established in §459. The former requires an unlawful entry along the lines of breaking and entering. See 3 W. LaFave, Substantive Criminal Law §21.1(a) (2d ed. 2003) (hereinafter LaFave). The latter does not, and indeed covers simple shoplifting, as even the Government acknowledges. See Brief for United States 38; *Barry*, 94 Cal., at 483–484, 29 P., at 1026–1027. In *Taylor*'s words, then, §459 "define[s] burglary more broadly" than the generic offense. 495 U. S., at 599. And because that is true—because California, to get a conviction, need not prove that Descamps broke and entered—a §459 violation cannot serve as an ACCA predicate. Whether Descamps *did* break and enter makes no difference. And likewise, whether he ever admitted to breaking and entering is irrelevant. Our decisions authorize review of the plea colloquy or other approved extra-statutory documents only when a statute defines burglary not (as here) overbroadly, but instead alternatively, with one statutory phrase corresponding to the generic crime and another not. In that circumstance,

_____

news to the *Taylor*, *Shepard,* and *Johnson* Courts: All those decisions rested on the explicit premise that the laws "contain[ed] statutory phrases that cover several different . . . crimes," not several different methods of committing one offense. *Johnson*, 559 U. S., at 144 (citing *Nijhawan*, 557 U. S., at 41). And if the dissent's real point is that distinguishing between "alternative elements" and "alternative means" is difficult, we can see no real-world reason to worry. Whatever a statute lists (whether elements or means), the documents we approved in *Taylor* and *Shepard—i.e.,* indictment, jury instructions, plea colloquy, and plea agreement—would reflect the crime's elements. So a court need not parse state law in the way the dissent suggests: When a state law is drafted in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense.

a court may look to the additional documents to determine
which of the statutory offenses (generic or non-generic)
formed the basis of the defendant's conviction. But here
no uncertainty of that kind exists, and so the categorical
approach needs no help from its modified partner. We
know Descamps' crime of conviction, and it does not corre-
spond to the relevant generic offense. Under our prior
decisions, the inquiry is over.

## III

The Court of Appeals took a different view. Dismissing
everything we have said on the subject as "lack[ing] con-
clusive weight," the Ninth Circuit held in *Aguila-Montes*
that the modified categorical approach could turn a convic-
tion under *any* statute into an ACCA predicate offense.
655 F. 3d, at 931. The statute, like §459, could contain a
single, indivisible set of elements covering far more con-
duct than the generic crime—and still, a sentencing court
could "conside[r] to some degree the factual basis for the
defendant's conviction" or, otherwise stated, "the particu-
lar acts the defendant committed." *Id.,* at 935–936. More
specifically, the court could look to reliable materials (the
charging document, jury instructions, plea colloquy, and so
forth) to determine "what facts" can "confident[ly]" be
thought to underlie the defendant's conviction in light of
the "prosecutorial theory of the case" and the "facts put
forward by the government." *Id.,* at 936–937. It makes no
difference, in the Ninth Circuit's view, whether "specific
words in the statute" of conviction "'actually required'"
the jury (or judge accepting a plea) "to find a particular
generic element." *Id.,* at 936 (quoting *Taylor,* 495 U. S., at
602; internal quotation marks omitted).[3]

----

[3] The dissent, as we understand it, takes the same view as the Ninth
Circuit; accordingly, each of the reasons—statutory, constitutional, and
practical—that leads us to reject *Aguila-Montes* proves fatal to the
dissent's position as well. The dissent several times obscures its call to

That approach—which an objecting judge aptly called "modified factual," 655 F. 3d, at 948 (Berzon, J., concurring in judgment)—turns an elements-based inquiry into an evidence-based one. It asks not whether "statutory definitions" necessarily require an adjudicator to find the generic offense, but instead whether the prosecutor's case realistically led the adjudicator to make that determination. And it makes examination of extra-statutory documents not a tool used in a "narrow range of cases" to identify the relevant element from a statute with multiple alternatives, but rather a device employed in every case to evaluate the facts that the judge or jury found. By this point, it should be clear that the Ninth Circuit's new way of identifying ACCA predicates has no roots in our precedents. But more: *Aguila-Montes* subverts those decisions, conflict-

———————

explore facts with language from our categorical cases, asking whether "the relevant portions of the state record clearly show that the jury necessarily found, or the defendant necessarily admitted, the elements of [the] generic [offense]." *Post,* at 14; see *Shepard*, 544 U. S., at 24 (plurality opinion) (reiterating *Taylor*'s "demanding requirement that . . . a prior conviction '*necessarily' involve[]*" a jury finding on each element of the generic offense) (emphasis added). But the dissent nowhere explains how a factfinder can have "necessarily found" a non-element— that is, a fact that by definition is *not* necessary to support a conviction. The dissent's fundamental view is that a sentencing court should be able to make reasonable "inference[s]" about what the factfinder really (even though not necessarily) found. See *post*, at 15. That position accords with our dissenting colleague's previously expressed skepticism about the categorical approach. See *Moncrieffe* v. *Holder*, 569 U. S. ___, ___ (2013) (slip op., at 11) (ALITO, J., dissenting) ("I would hold that the categorical approach is not controlling where the state conviction at issue was based on a state statute that encompasses both a substantial number of cases that qualify under the federal standard and a substantial number that do not. In such situations, it is appropriate to look beyond the elements of the state offense and to rely as well on facts that were admitted in state court or that, taking a realistic view, were clearly proved"). But there are several decades of water over that dam, and the dissent offers no newly persuasive reasons for revisiting our precedents.

ing with each of the rationales supporting the categorical approach and threatening to undo all its benefits.

## A

This Court offered three grounds for establishing our elements-centric, "formal categorical approach." *Taylor*, 495 U. S., at 600. First, it comports with ACCA's text and history. Second, it avoids the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries. And third, it averts "the practical difficulties and potential unfairness of a factual approach." *Id.,* at 601. When assessed in light of those three reasons, the Ninth Circuit's ruling strikes out swinging.

Start with the statutory text and history. As we have long recognized, ACCA increases the sentence of a defendant who has three "previous convictions" for a violent felony—not a defendant who has thrice committed such a crime. 18 U. S. C. §924(e)(1); see *Taylor*, 495 U. S., at 600. That language shows, as *Taylor* explained, that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Ibid.*; see *Shepard*, 544 U. S., at 19. If Congress had wanted to increase a sentence based on the facts of a prior offense, it presumably would have said so; other statutes, in other contexts, speak in just that way. See *Nijhawan*, 557 U. S., at 36 (construing an immigration statute as requiring a "'circumstance-specific,' not a 'categorical,'" approach). But in ACCA, *Taylor* found, Congress made a deliberate decision to treat every conviction of a crime in the same manner: During the lengthy debate preceding the statute's enactment, "no one suggested that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case." 495 U. S., at 601. Congress instead meant

ACCA to function as an on-off switch, directing that a prior crime would qualify as a predicate offense in all cases or in none.

The Ninth Circuit's approach runs headlong into that congressional choice. Instead of reviewing documents like an indictment or plea colloquy only to determine "which statutory phrase was the basis for the conviction," the Ninth Circuit looks to those materials to discover what the defendant actually did. *Johnson*, 559 U. S., at 144. This case demonstrates the point. Descamps was not *convicted of* generic burglary, because (as the Government agrees) §459 does not contain that crime's required unlawful-entry element. See Brief for United States 38, 43–44. At most, the colloquy showed that Descamps *committed* generic burglary, and so hypothetically *could have been* convicted under a law criminalizing that conduct. But that is just what we said, in *Taylor* and elsewhere, is not enough. See 495 U. S., at 600; *Carachuri-Rosendo* v. *Holder*, 560 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 11) (rejecting such a "'hypothetical approach'" given a similar statute's directive to "look to the conviction itself," rather than "to what might have or could have been charged"). And the necessary result of the Ninth Circuit's method is exactly the differential treatment we thought Congress, in enacting ACCA, took care to prevent. In the two years since *Aguila-Montes*, the Ninth Circuit has treated some, but not other, convictions under §459 as ACCA predicates, based on minor variations in the cases' plea documents. Compare, *e.g.,* 466 Fed. Appx., at 565 (Descamps' §459 conviction counts as generic burglary), with 655 F. 3d, at 946 (Aguila-Montes' does not).

Similarly, consider (though *Aguila-Montes* did not) the categorical approach's Sixth Amendment underpinnings. We have held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a

jury, and proved beyond a reasonable doubt." *Apprendi* v. *New Jersey*, 530 U. S. 466, 490 (2000). Under ACCA, the court's finding of a predicate offense indisputably increases the maximum penalty. Accordingly, that finding would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction. Those concerns, we recognized in *Shepard*, counsel against allowing a sentencing court to "make a disputed" determination "about what the defendant and state judge must have understood as the factual basis of the prior plea," or what the jury in a prior trial must have accepted as the theory of the crime. 544 U. S., at 25 (plurality opinion); see *id.*, at 28 (THOMAS, J., concurring in part and concurring in judgment) (stating that such a finding would "giv[e] rise to constitutional error, not doubt"). Hence our insistence on the categorical approach.

Yet again, the Ninth Circuit's ruling flouts our reasoning— here, by extending judicial factfinding beyond the recognition of a prior conviction. Our modified categorical approach merely assists the sentencing court in identifying the defendant's crime of conviction, as we have held the Sixth Amendment permits. But the Ninth Circuit's reworking authorizes the court to try to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct. See *Aguila-Montes*, 655 F. 3d, at 937. And there's the constitutional rub. The Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances. See, *e.g., Richardson* v. *United States*, 526 U. S. 813, 817 (1999). Similarly, as *Shepard* indicated, when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say,

about superfluous facts cannot license a later sentencing court to impose extra punishment. See 544 U. S., at 24–26 (plurality opinion). So when the District Court here en-hanced Descamps' sentence, based on his supposed acqui-escence to a prosecutorial statement (that he "broke and entered") irrelevant to the crime charged, the court did just what we have said it cannot: rely on its own finding about a non-elemental fact to increase a defendant's max-imum sentence.

Finally, the Ninth Circuit's decision creates the same "daunting" difficulties and inequities that first encouraged us to adopt the categorical approach. *Taylor*, 495 U. S., at 601–602. In case after case, sentencing courts following *Aguila-Montes* would have to expend resources examining (often aged) documents for evidence that a defendant admitted in a plea colloquy, or a prosecutor showed at trial, facts that, although unnecessary to the crime of conviction, satisfy an element of the relevant generic offense. The meaning of those documents will often be uncertain. And the statements of fact in them may be downright wrong. A defendant, after all, often has little incentive to contest facts that are not elements of the charged offense—and may have good reason not to. At trial, extraneous facts and arguments may confuse the jury. (Indeed, the court may prohibit them for that rea-son.) And during plea hearings, the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations. In this case, for example, Descamps may have let the prosecutor's statement go by because it was irrelevant to the proceedings. He likely was not thinking about the possibility that his silence could come back to haunt him in an ACCA sentencing 30 years in the future. (Actually, he could not have been thinking that thought: ACCA was not even on the books at the time of Descamps' burglary conviction.)

Still worse, the *Aguila-Montes* approach will deprive

some defendants of the benefits of their negotiated plea deals. Assume (as happens every day) that a defendant surrenders his right to trial in exchange for the government's agreement that he plead guilty to a less serious crime, whose elements do not match an ACCA offense. Under the Ninth Circuit's view, a later sentencing court could still treat the defendant as though he had pleaded to an ACCA predicate, based on legally extraneous statements found in the old record. *Taylor* recognized the problem: "[I]f a guilty plea to a lesser, nonburglary offense was the result of a plea bargain," the Court stated, "it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty" to generic burglary. 495 U. S., at 601–602. That way of proceeding, on top of everything else, would allow a later sentencing court to rewrite the parties' bargain.

B

The Ninth Circuit defended its (excessively) modified approach by denying any real distinction between divisible and indivisible statutes extending further than the generic offense. "The only conceptual difference," the court reasoned, "is that [a divisible statute] creates an *explicitly* finite list of possible means of commission, while [an indivisible one] creates an *implied* list of every means of commission that otherwise fits the definition of a given crime." *Aguila-Montes*, 655 F. 3d, at 927. For example, an indivisible statute "requir[ing] use of a 'weapon' is not meaningfully different"—or so says the Ninth Circuit— "from a statute that simply lists every kind of weapon in existence . . . ('gun, axe, sword, baton, slingshot, knife, machete, bat,' and so on)." *Ibid.* In a similar way, *every* indivisible statute can be imaginatively reconstructed as a divisible one. And if that is true, the Ninth Circuit asks, why limit the modified categorical approach only to explicitly divisible statutes?

Opinion of the Court

The simple answer is: Because only divisible statutes enable a sentencing court to conclude that a jury (or judge at a plea hearing) has convicted the defendant of every element of the generic crime. A prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives. See, *e.g., The Confiscation Cases*, 20 Wall. 92, 104 (1874) ("[A]n indictment or a criminal information which charges the person accused, in the disjunctive, with being guilty of one or of another of several offences, would be destitute of the necessary certainty, and would be wholly insufficient").[4] And the jury, as instructions in the case will make clear, must then find that element, unanimously and beyond a reasonable doubt. So assume, along the lines of the Ninth Circuit's example, that a statute criminalizes assault with any of eight specified weapons; and suppose further, as the Ninth Circuit did, that only assault with a *gun* counts as an ACCA offense. A later sentencing court need only check the charging documents and instructions ("Do they refer to a gun or something else?") to determine whether in convicting a defendant under that divisible statute, the jury necessarily found that he committed the ACCA-qualifying crime.

None of that is true of an overbroad, indivisible statute. A sentencing court, to be sure, can hypothetically reconceive such a statute in divisible terms. So, as *Aguila-Montes* reveals, a court blessed with sufficient time and

_____

[4] See also 1 C. Wright & A. Leipold, Federal Practice and Procedure: Criminal §125, pp. 550–551 (4th ed. 2008) ("If a single statute sets forth several different offenses, [a] pleading . . . that does not indicate which crime [the] defendant allegedly committed is insufficient"); 5 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure §19.3(a), p. 263 (3d ed. 2007) ("[W]here a statute specifies several different ways in which the crime can be committed, [courts often] hold that the pleading must refer to the particular alternative presented in the individual case").

imagination could devise a laundry list of potential
"weapons"—not just the eight the Ninth Circuit mentioned,
but also (for starters)  grenades, pipe bombs, spears, tire
irons, BB guns, nunchucks, and crossbows.  But the thing
about hypothetical lists is that they are, well, hypothetical.
As long as the statute itself requires only an indeterminate
"weapon," that is all the indictment must (or is likely to)
allege and all the jury instructions must (or are likely to)
mention.  And most important, that is all the jury must
find to convict the defendant.  The jurors need not all
agree on whether the defendant used a gun or a knife or a
tire iron (or any other particular weapon that might ap-
pear in an imagined divisible statute), because the actual
statute requires the jury to find only a "weapon."  And
even if in many cases, the jury could have readily reached
consensus on the weapon used, a later sentencing court
cannot supply that missing judgment. Whatever the un-
derlying facts or the evidence presented, the defendant
still would not have been convicted, in the deliberate and
considered way the Constitution guarantees, of an offense
with the same (or narrower) elements as the supposed
generic crime (assault with a gun).

Indeed, accepting the Ninth Circuit's contrary reasoning
would altogether collapse the distinction between a cate-
gorical and a fact-specific approach.  After all, the Ninth
Circuit's "weapons" example is just the tip of the iceberg:
Courts can go much further in reconceiving indivisible
statutes as impliedly divisible ones.  In fact, every element
of every statute can be imaginatively transformed as the
Ninth Circuit suggests—so that every crime is seen as
containing an infinite number of sub-crimes corresponding
to "all the possible ways an individual can commit" it.
*Aguila-Montes*, 655 F. 3d, at 927.  (Think: Professor Plum,
in the ballroom, with the candlestick?; Colonel Mustard, in
the conservatory, with the rope, on a snowy day, to cover
up his affair with Mrs. Peacock?)  If a sentencing court,

as the Ninth Circuit holds, can compare each of those "implied . . . means of commission" to the generic ACCA offense, *ibid.* (emphasis deleted), then the categorical approach is at an end. At that point, the court is merely asking whether a particular set of facts leading to a conviction conforms to a generic ACCA offense. And that is what we have expressly and repeatedly forbidden. Courts may *modify* the categorical approach to accommodate alternative "statutory definitions." *Ibid.*; cf. *MCI Telecommunications Corp.* v. *American Telephone & Telegraph Co.*, 512 U. S. 218, 225 (1994) ("'[T]o modify' means to change moderately or in minor fashion"). They may not, by pretending that every fact pattern is an "implied" statutory definition, *Aguila-Montes*, 655 F. 3d, at 927, convert that approach into its opposite.

## IV

The Government tries to distance itself from the Ninth Circuit by offering a purportedly narrower theory—that although an indivisible statute that is "truly missing" an element of the generic offense cannot give rise to an ACCA conviction, California's burglary law can do so because it merely "contains a broader version of the [generic] element of unlawfulness of entry." Brief for United States 11–12. The Government's argument proceeds in three steps. It begins from the premise that sentencing courts applying ACCA should consider not only the statute defining a prior crime but also any judicial interpretations of it. Next, the Government points to a California decision holding (not surprisingly) that a defendant cannot "burglariz[e] his own home"; the case's reasoning, the Government notes, is that §459 (though not saying so explicitly) requires "an entry which invades a possessory right." *People* v. *Gauze*, 15 Cal. 3d 709, 713–716, 542 P. 2d 1365, 1367–1368 (1975). Given that precedent, the Government contends, §459 includes a kind of "unlawful entry" ele-

ment, although it is broader than the generic crime's
analogous requirement. Finally, the Government asserts
that sentencing courts may use the modified approach "to
determine whether a particular defendant's conviction
under" such an overbroad statute actually "was for [the]
generic" crime. Brief for United States 11.

Although elaborately developed in the Government's
brief, this argument's first two steps turn out to be side-
shows. We may reserve the question whether, in deter-
mining a crime's elements, a sentencing court should take
account not only of the relevant statute's text, but of judi-
cial rulings interpreting it. And we may assume, as the
Government insists, that California caselaw treats §459 as
including an element of entry "invading a possessory
right"—although, truth be told, we find the state decisions
on that score contradictory and confusing.[5] Even on those
assumptions, §459's elements do not come into line with
generic burglary's. As the Government concedes, almost
every entry onto another's property with intent to steal—
including, for example, a shoplifter's walking into an open
store—"invades a possessory right" under §459. See Brief
for United States 38; *Gauze*, 15 Cal. 3d, at 714, 542 P. 2d,
at 1367. By contrast, generic burglary's unlawful-entry
element excludes any case in which a person enters prem-
ises open to the public, no matter his intent; the generic
crime requires breaking and entering or similar unlawful

―――――――

[5] Several decisions treat "invasion of a possessory right" as an aspect
of §459's entry element, see, *e.g., People* v. *Waidla*, 22 Cal. 4th 690, 723,
996 P. 2d 46, 65 (2000); *Fortes* v. *Sacramento Munic. Ct. Dist.*, 113 Cal.
App. 3d 704, 712–714, 170 Cal. Rptr. 292, 296–297 (1980), but others
view the issue of possessory right as bearing only on the affirmative
defense of consent, see, *e.g., People* v. *Sherow*, 196 Cal. App. 4th 1296,
1303–1305, 1311, and n. 9, 128 Cal. Rptr. 3d 255, 260–261, 266, and
n. 9 (2011); *People* v. *Felix*, 23 Cal. App. 4th 1385, 1397, 28 Cal. Rptr.
2d 860, 867 (1994). And California's pattern jury instructions do *not*
require the jury to find invasion of a possessory right before convicting
a defendant of burglary. See 1 Cal. Jury Instr., Crim., No. 1700 (2012).

activity. See Brief for United States 38; LaFave §21.1(a). So everything rests on the Government's third point: that this mismatch does not preclude applying the modified categorical approach, because it results not from a missing element but instead from an element's overbreadth.

But for starters, we see no principled way to make that distinction. Most overbroad statutes can also be characterized as missing an element; and most statutes missing an element can also be labeled overbroad. Here is the only conclusion in *Aguila-Montes* we agree with: "[I]t is difficult, if not impossible" to determine which is which. 655 F. 3d, at 925. The example that court gave was as follows: A statute of conviction punishes possession of pornography, but a federal law carries a sentence enhancement for possession of child pornography. Is the statute of conviction overbroad because it includes both adult and child pornography; or is that law instead missing the element of involvement of minors? The same name game can be played with §459. The Government labors mightily to turn what it fears looks like a missing-element statute into an overbroad statute through the incorporation of judicial decisions. But even putting those decisions aside, the Government might have described §459 as merely having an overbroad element because "entry" includes both the lawful and the unlawful kind. And conversely, Descamps could claim that even as judicially interpreted, §459 is entirely missing generic burglary's element of breaking and entering or similar unlawful conduct. All is in the eye of the beholder, and prone to endless manipulation.

In any event, and more fundamentally, we see no reason why the Government's distinction should matter. Whether the statute of conviction has an overbroad or missing element, the problem is the same: Because of the mismatch in elements, a person convicted under that statute is never convicted of the generic crime. In this case, for

example, Descamps was not convicted of generic burglary because §459, whether viewed as missing an element or containing an overbroad one, does not require breaking and entering. So every reason we have given—textual, constitutional, and practical—for rejecting the Ninth Circuit's proposed approach applies to the Government's as well. See *supra,* at 12–16. At bottom, the Government wants the same thing as the Ninth Circuit (if nominally in a few fewer cases): It too wishes a sentencing court to look beyond the elements to the evidence or, otherwise said, to explore whether a person convicted of one crime could also have been convicted of another, more serious offense. But that circumstance-specific review is just what the categorical approach precludes. And as we have explained, we adopted the modified approach to help implement the categorical inquiry, not to undermine it.

V

Descamps may (or may not) have broken and entered, and so committed generic burglary. But §459—the crime of which he was convicted—does not require the factfinder (whether jury or judge) to make that determination. Because generic unlawful entry is not an element, or an alternative element, of §459, a conviction under that statute is never for generic burglary. And that decides this case in Descamps' favor; the District Court should not have enhanced his sentence under ACCA.[6] That court and

---

[6] The Government here forfeited an alternative argument that §459 qualifies as a predicate offense under ACCA's "residual clause," which covers statutes "involv[ing] conduct that presents a serious potential risk of physical injury to another." 18 U. S. C. §924(e)(2)(B)(ii). We express no view on that argument's merits. Compare *United States* v. *Mayer*, 560 F. 3d 948, 960–963 (CA9 2009) (holding that Oregon's burglary statute falls within the residual clause, even though it does not include all of generic burglary's elements), with *id.,* at 951 (Kozinski, C. J., dissenting from denial of rehearing en banc) (arguing that the panel opinion "is a train wreck in the making").

the Ninth Circuit erred in invoking the modified categori-
cal approach to look behind Descamps' conviction in
search of record evidence that he actually committed the
generic offense. The modified approach does not authorize
a sentencing court to substitute such a facts-based inquiry
for an elements-based one. A court may use the modified
approach only to determine which alternative element in a
divisible statute formed the basis of the defendant's con-
viction. Accordingly, we reverse the judgment of the Court
of Appeals.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 11–9540

_____

## MATTHEW ROBERT DESCAMPS, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 20, 2013]

JUSTICE KENNEDY, concurring.

As the Court explains, this case concerns earlier convictions under state statutes classified by cases in the Courts of Appeals, and now in today's opinion for the Court, as "indivisible." See, *e.g., United States* v. *Aguila-Montes de Oca*, 655 F. 3d 915 (CA9 2011) (en banc) (*per curiam*); *United States* v. *Beardsley*, 691 F. 3d 252 (CA2 2012). This category is used to describe a class of criminal statutes that are drafted with a single set of elements that are broader than those of the generic definition of the corresponding crime enumerated in the Armed Career Criminal Act (ACCA), 18 U. S. C. §924(e)(2)(B)(ii).

Just one of the substantial concerns that the Court is correct to consider is that, in the regular course of the criminal process, convictions may be entered, often by guilty pleas, when either the attorney or the client, or both, have given no consideration to possible later consequences under ACCA. See *ante,* at 15–16. As a result, certain facts in the documents approved for judicial examination in *Shepard* v. *United States*, 544 U. S. 13 (2005), may go uncontested because they do not alter the sentencing consequences of the crime, even though their effect is to require a later enhancement under ACCA. This significant risk of failing to consider the full consequences of the plea and conviction is troubling.

Balanced against this, as JUSTICE ALITO indicates, is that the dichotomy between divisible and indivisible state criminal statutes is not all that clear. See *post*, at 12–13 (dissenting opinion). The effect of today's decision, more-over, is that an unspecified number, but likely a large number, of state criminal statutes that are indivisible but that often do reach serious crimes otherwise subject to ACCA's provisions, now must be amended by state legisla-tures. Otherwise, they will not meet federal requirements even though they would have come within ACCA's terms had the state statute been drafted in a different way. This is an intrusive demand on the States.

On due consideration, the concerns well expressed by the Court persuade me that it reaches the correct result. The disruption to the federal policy underlying ACCA, nevertheless, is troubling and substantial. See *post*, at 13–14 (ALITO, J., dissenting). If Congress wishes to pursue its policy in a proper and efficient way without mandat-ing uniformity among the States with respect to their criminal statutes for scores of serious offenses, and with-out requiring the amendment of any number of federal criminal statutes as well, Congress should act at once. It may then determine whether ACCA's design and structure should be modified to meet the concerns expressed both by the Court and the dissenting opinion.

With these observations, I join the opinion of the Court.

# SUPREME COURT OF THE UNITED STATES

_____

No. 11–9540

_____

MATTHEW ROBERT DESCAMPS, PETITIONER *v.*
UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 20, 2013]

JUSTICE THOMAS, concurring in the judgment.

Petitioner Matthew Descamps was convicted of being a felon in possession of a firearm, 18 U. S. C. §922(g), which subjected him to a maximum sentence of 10 years' imprisonment. The District Court, however, applied an Armed Career Criminal Act (ACCA) enhancement with a mandatory *minimum* of 15 years based in part on Descamps' earlier California conviction for burglary. See §924(e). The California law says that any "person who enters" any of a number of structures "with intent to commit grand or petit larceny or any felony is guilty of burglary." California Penal Code Ann. §459 (West 2010). That law does not, on its face, require the jury to determine whether the entry itself was unlawful, a required element of the so-called "generic" offense of burglary that qualifies as an ACCA predicate. See *Taylor* v. *United States*, 495 U. S. 575, 599 (1990). The majority holds that a court may not review the underlying facts of Descamps' state crime to determine whether he entered the building unlawfully and, thus, that his burglary conviction may not be used as a predicate offense under ACCA. While I agree with the Court's conclusion, I disagree with its reasoning.

I have previously explained that ACCA runs afoul of *Apprendi* v. *New Jersey*, 530 U. S. 466 (2000), because it allows the judge to "mak[e] a finding that raises [a de-

fendant's] sentence beyond the sentence that could have lawfully been imposed by reference to facts found by the jury or admitted by the defendant." *James* v. *United States*, 550 U. S. 192, 231 (2007) (dissenting opinion) (internal quotation marks omitted).  Under the logic of *Apprendi*, a court may not find facts about a prior conviction when such findings increase the statutory maximum. This is so whether a court is determining whether a prior conviction was entered, see 530 U. S., at 520–521 (THOMAS, J., concurring), or attempting to discern what facts were necessary to a prior conviction.  See *James*, *supra*, at 231–232 (THOMAS, J., dissenting).  In either case, the court is inappropriately finding a fact that must be submitted to the jury because it "increases the penalty for a crime beyond the prescribed statutory maximum." *Apprendi*, *supra*, at 490.

In light of the foregoing, it does not matter whether a statute is "divisible" or "indivisible," see *ante,* at 1–2, and courts should not have to struggle with the contours of the so-called "modified categorical" approach.  *Ibid.*  The only reason Descamps' ACCA enhancement is before us is "because this Court has not yet reconsidered *Almendarez-Torres* v. *United States*, 523 U. S. 224 (1998), which draws an exception to the *Apprendi* line of cases for judicial factfinding that concerns a defendant's prior convictions." *Shepard* v. *United States*, 544 U. S. 13, 27 (2005) (THOMAS, J., concurring in part and concurring in judgment).  Regardless of the framework adopted, judicial factfinding increases the statutory maximum in violation of the Sixth Amendment.  However, because today's opinion at least limits the situations in which courts make factual determinations about prior convictions, I concur in the judgment.

# SUPREME COURT OF THE UNITED STATES

No. 11–9540

MATTHEW ROBERT DESCAMPS, PETITIONER *v.*
UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 20, 2013]

JUSTICE ALITO, dissenting.

The Court holds, on highly technical grounds, that no California burglary conviction qualifies as a burglary conviction under the Armed Career Criminal Act (ACCA), 18 U. S. C. §924(c). This is so, according to the Court, because (1) burglary under California law is broader than so-called "generic burglary"—unlawfully entering or remaining in a building with the intent to commit a crime; (2) the California burglary statute is not "divisible"; and (3) our "modified categorical approach" cannot be used in a case involving an indivisible statute. Even when it is apparent that a California burglary conviction was based on what everyone imagines when the term "burglary" is mentioned—*e.g.,* breaking into a home to steal valuables— that conviction, the Court holds, must be ignored.

I would give ACCA a more practical reading. When it is clear that a defendant necessarily admitted or the jury necessarily found that the defendant committed the elements of generic burglary, the conviction should qualify. Petitioner's burglary conviction meets that requirement, and I would therefore affirm the decision of the Court of Appeals.

I

Before petitioner was charged in the case now before us,

he had already compiled a criminal record that included
convictions in Washington State for assault and threaten-
ing to kill a judge, and convictions in California for rob-
bery and burglary. See App. 11a–12a; 466 Fed. Appx. 563,
565 (CA9 2012). After his release from custody for these
earlier crimes, petitioner fired a gun in the direction of a
man who supposedly owed him money for methampheta-
mine, and as a result, he was charged in federal court with
possession of a firearm by a convicted felon, in violation of
§922(g)(1). A jury found him guilty, and the District Court
imposed an enhanced sentence under ACCA because he
had the requisite number of previous convictions for "a
violent felony or a serious drug offense." §924(e). ACCA
defines a "violent felony" to include a "burglary" that is
"punishable by imprisonment for a term exceeding one
year," §924(e)(2)(B), and both the District Court and the
Court of Appeals found that petitioner's California bur-
glary conviction fit this definition.

While the concept of a conviction for burglary might
seem simple, things have not worked out that way under
our case law. In *Taylor* v. *United States*, 495 U. S. 575,
599 (1990), we held that "burglary" under ACCA means
what we called "generic burglary," that is, the "unlawful or
unprivileged entry into, or remaining in, a building or
structure, with intent to commit a crime." Determining
whether a burglary conviction qualifies under this defini-
tion is easy if the elements set out in the state statute are
the same as or narrower than the elements of generic
burglary, see *ibid.*, but what if the state offense is broader?
In that event, we have held, a federal court may sometimes
apply what we have termed the "modified categorical
approach," that is, it may examine some items in the
state-court record, including charging documents, jury
instructions, and statements made at guilty plea proceed-
ings, to determine if the defendant was actually found to
have committed the elements of the generic offense. See

*Shepard* v. *United States*, 544 U. S. 13, 20 (2005); *Taylor*, *supra,* at 602.

Petitioner argues that his 1978 conviction for burglary under California Penal Code §459 does not qualify as a burglary conviction for ACCA purposes because of the particular way in which this provision is worded. Section 459 provides that a "person who enters" certain locations "with intent to commit grand or petit larceny or any felony is guilty of burglary." Cal. Penal Code Ann. §459 (West 2010). This provision is broader than generic burglary in two respects.

The first, which does not preclude application of the modified categorical approach, concerns the place burglarized. While generic burglary applies only to offenses involving the entry of a building, the California provision also reaches offenses involving the entry of some other locations, see *ibid.* Under our cases, however, a federal court considering whether to apply ACCA may determine, based on an examination of certain relevant documents, whether the conviction was actually based on the entry of a building and, if it was, may impose an increased sentence. See *Johnson* v. *United States*, 559 U. S. 133, 144 (2010); *Nijhawan* v. *Holder*, 557 U. S. 29, 35 (2009); *Shepard*, *supra*, at 26.

The second variation is more consequential. Whereas generic burglary requires an entry that is unlawful or unprivileged, the California statute refers without qualification to "[e]very person who enters." §459. Petitioner argues, and the Court agrees, that this discrepancy renders the modified categorical approach inapplicable to his California burglary conviction.

## II

The Court holds that "sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of

elements." *Ante,* at 2. Because the Court's holding is based on the distinction between "divisible" and "indivisible" statutes, it is important to identify precisely what this taxonomy means.

My understanding is that a statute is divisible, in the sense used by the Court, only if the offense in question includes as separate elements all of the elements of the generic offense. By an element, I understand the Court to mean something on which a jury must agree by the vote required to convict under the law of the applicable jurisdiction. See *ante*, at 14 (citing *Richardson* v. *United States*, 526 U. S. 813, 817 (1999)). And although the Court reserves decision on the question whether a sentencing court may take authoritative judicial decisions into account in identifying the elements of a statute, see *ante*, at 20, I will assume that a sentencing court may do so. While the elements of a criminal offense are generally set out in the statutory text, courts sometimes find that unmentioned elements are implicit. See, *e.g., Neder* v. *United States*, 527 U. S. 1, 20 (1999) (holding that federal mail fraud, wire fraud, and bank fraud statutes require proof of materiality even though that element is not mentioned in the statutory text). I cannot think of any reason why an authoritative decision of this sort should be ignored, and the Court has certainly not provided any. I therefore proceed on the assumption that a statute is divisible if the offense, *as properly construed*, has the requisite elements.

The Court's holding that the modified categorical approach may be used only when a statute is divisible in this sense is not required by ACCA or by our prior cases and will cause serious practical problems.

## A

Nothing in the text of ACCA mandates the Court's exclusive focus on the elements of an offense. ACCA increases the sentence of a defendant who has "three

previous *convictions* . . . for a violent felony," 18 U. S. C. §924(e)(1) (emphasis added), and the Court claims that the word "convictions" mandates a narrow, elements-based inquiry, see *ante,* at 12. But "[i]n ordinary speech, when it is said that a person was convicted of or for doing something, the 'something' may include facts that go beyond the bare elements of the relevant criminal offense." *Moncrieffe* v. *Holder*, 569 U. S. \_\_\_, \_\_\_ (2013) (ALITO, J., dissenting) (slip op., at 10–11).

Nor is an exclusively elements-based inquiry mandated by ACCA's definition of a "violent felony" as "any crime . . . that . . . is burglary," §924(e)(2)(B)(ii). In drafting that provision, Congress did not say "any crime that has *the elements* of burglary." Indeed, the fact that Congress referred to "elements" elsewhere in the same subparagraph, see §924(e)(2)(B)(i) (defining "violent felony" to mean any crime that "has *as an element* the use, attempted use, or threatened use of physical force against the person of another" (emphasis added)), but omitted any reference to elements from §924(e)(2)(B)(ii) suggests, if anything, that it did not intend to focus exclusively on elements. Cf. *Caraco Pharmaceutical Laboratories, Ltd.* v. *Novo Nordisk A/S,* 566 U. S. \_\_\_, \_\_\_ (2012) (slip op., at 14–15).

B

The Court says that our precedents require an elements-based approach and accuses the Court of Appeals of "flout[ing] our reasoning" in *Taylor*, *Shepard*, *Nijhawan*, and *Johnson*, see *ante,* at 5–8, 14, but that charge is unfounded. In at least three of those cases, the Court thought that the modified categorical approach could be used in relation to statutes that may not have been divisible.

*Shepard* concerned prior convictions under two Massachusetts burglary statutes that applied not only to the entry of a "building" (as is the case with generic burglary)

but also to the entry of a "ship, vessel, or vehicle." Mass.
Gen. Laws Ann., ch. 266, §16 (West 2000). See also §18;
544 U. S., at 17. And the *Shepard* Court did not think
that this feature of the Massachusetts statutes precluded
the application of the modified categorical approach. See
*id.,* at 25–26; *ante*, at 6–7. See also *Nijhawan*, 557 U. S.,
at 35 (discussing *Shepard*).

In today's decision, the Court assumes that "building"
and the other locations enumerated in the Massachusetts
statutes, such as "vessel," were alternative elements, but
that is questionable. It is quite likely that the entry of a
building and the entry of a vessel were simply alternative
means of satisfying an element. See *Commonwealth* v.
*Cabrera*, 449 Mass. 825, 827, 874 N. E. 2d 654, 657 (2007)
("The elements of breaking and entering in the nighttime
with intent to commit a felony are (1) breaking and (2)
entering a building, ship, vessel or vehicle belonging
to another (3) at night, (4) with the intent to commit a
felony"). "[L]egislatures frequently enumerate alternative
means of committing a crime without intending to define
separate elements or separate crimes." *Schad* v. *Arizona*,
501 U. S. 624, 636 (1991) (plurality). The feature that
distinguishes elements and means is the need for juror
agreement, see *Richardson, supra,* at 817, and therefore in
determining whether the entry of a building and the entry
of a vessel are elements or means, the critical question is
whether a jury would have to agree on the nature of the
place that a defendant entered.

A case that we decided earlier this Term illustrates why
"building" and "vessel" may have been means and not
separate elements. In *Lozman* v. *Riviera Beach*, 568 U. S.
___ (2013), we were required to determine whether a
"floating home" (a buoyant but not very sea-worthy dwelling) was a "vessel." Seven of us thought it was not; two of
us thought it might be. Compare *id.,* at ___ (slip op. at 1),
with *id.,* at ___ (slip op., at 12). (SOTOMAYOR, J., dissent-

ing). Suppose that a defendant in Massachusetts was charged with breaking into a structure like the *Lozman* floating home. In order to convict, would it be necessary for the jury to agree whether this structure was a "building" or a "vessel"? If some jurors insisted it was a building and others were convinced it was a vessel, would the jury be hung? The Court's answer is "yes." According to the Court, if a defendant had been charged with burglarizing the *Lozman* floating home and this Court had been sitting as the jury, the defendant would have escaped conviction for burglary, no matter how strong the evidence, because the "jury" could not agree on whether he burglarized a building or a vessel.

I have not found a Massachusetts decision squarely on point, but there is surely an argument that the Massachusetts Legislature did not want to demand juror agreement on this question. In other words, there is a strong argument that entry of a "building" and entry of a "vessel" are merely alternative means, not alternative elements. And if that is so, the reasoning in *Shepard* undermines the Court's argument that the modified categorical approach focuses solely on elements and not on conduct.

*Johnson,* like *Shepard*, involved a statute that may have set out alternative means, rather than alternative elements. Under the Florida statute involved in that case, a battery occurs when a person either "1. [a]ctually and intentionally touches or strikes another person against the will of the other; or 2. [i]ntentionally causes bodily harm to another person." Fla. Stat. §784.03(1)(a) (2010). It is a distinct possibility (one not foreclosed by any Florida decision of which I am aware) that a conviction under this provision does not require juror agreement as to whether a defendant firmly touched or lightly struck the victim. Nevertheless, in *Johnson*, we had no difficulty concluding

that the modified categorical approach could be applied.[1]
See 559 U. S., at 137.[2]

Far from mandating the Court's approach, these deci-
sions support a practical understanding of the modified
categorical approach. Thus, in *Shepard*, we observed that
the factual circumstances of a defendant's prior conviction
may be relevant to determining whether it qualifies as a
violent felony under ACCA. See 544 U. S., at 20–21
("With such material in a pleaded case, a later court could
generally tell whether the plea had 'necessarily' rested on
the *fact* identifying the burglary as generic, just as the
details of instructions could support that conclusion in the

————————

[1] However, because the *Shepard* documents did not reveal whether
Johnson had been found to have touched or struck, we had to determine
whether the relatively innocuous phrase—"[a]ctually and intentionally
touch[ing]" another person—constituted physical force for purposes of
§924(e)(2)(B)(i). See *Johnson*, 559 U. S., at 137.

[2] The remaining case, *Taylor* v. *United States*, 495 U. S. 575 (1990),
may also have involved a statute that was not divisible, but the situa-
tion is less clear. There, the defendant had several Missouri burglary
convictions, and Missouri had several different burglary provisions in
effect at the time in question. See *id.,* at 578, n. 1. The particular
provision involved in each of those cases was not certain. *Ibid.* At least
one of those provisions, however, may not have been divisible. That
provision, Mo. Rev. Stat. §560.070 (1969) (repealed), applied not only to
buildings but also to "any booth or tent," "any boat or vessel," or a
"railroad car." It is not entirely clear whether a Missouri court would
have required jurors to agree on a particular choice from this list. In
*State* v. *Vandergriff*, 403 S. W. 2d 579, 581 (Mo. 1966), the Missouri
Supreme Court held that an information was deficient because it
"omitted a description of the type of building that might be burglarized
as defined by §560.070, and thereby omitted an essential element of the
offense of burglary in the second degree." Because an information must
generally include factual details that go beyond the elements of an
offense, see 5 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal
Procedure §19.3(b), p. 276 (3d ed. 2007) (hereinafter LaFave), it is
possible that the Missouri court did not mean to say that the type of
building was an element in the sense in which I understand the Court
to use the term here.

jury case, or the details of a generically limited charging document would do in any sort of case" (emphasis added; citation omitted)); *id.*, at 24 (plurality opinion) ("Developments in the law since *Taylor* . . . provide a further reason to adhere to the demanding requirement that . . . a prior conviction 'necessarily' involved (and a prior plea necessarily admitted) *facts equating to* generic burglary" (emphasis added)); *id.*, at 25 (noting that, in the context of a nongeneric burglary statute, unless the charging documents "narro[w] the charge to generic limits, the only certainty of a generic finding lies in jury instructions, or bench-trial findings and rulings, or (in a pleaded case) in the defendant's own admissions or accepted *findings of fact* confirming the *factual basis* for a valid plea" (emphasis added)). And in *Nijhawan*, we departed from the categorical approach altogether and instead applied a "circumstance-specific" approach. See 557 U. S., at 36, 38. If anything, then, *Nijhawan* undermines the majority's position that rigid adherence to elements is always required.

## C

The Court fears that application of the modified categorical approach to statutes such as §459 would be unfair to defendants, who "often ha[ve] little incentive to contest facts that are not elements of the charged offense" and "may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations." *Ante*, at 15. This argument attributes to criminal defendants and their attorneys a degree of timidity that may not be realistic. But in any event, even if a defendant does not think it worthwhile to "squabbl[e]" about insignificant factual allegations, a defendant clearly has an incentive to dispute allegations that may have a bearing on his sentence. And that will often be the case when alternative elements or means suggest different degrees of culpability. Cf. Cal.

Penal Code Ann. §460 (providing that burglary of certain inhabited locations enumerated in §459 is punishable in the first degree, and that burglary of all other locations is punishable in the second degree).

D

The Court's approach, I must concede, does have one benefit: It provides an extra measure of assurance that a burglary conviction will not be counted as an ACCA predicate unless the defendant, if he went to trial, was actually found by a jury to have committed the elements of the generic offense. But this extra bit of assurance will generally be quite modest at best.

To see why this is so, compare what would happen under an indivisible burglary statute that simply requires entry invading a possessory right, and a divisible statute that has the following two alternative elements: (1) entry by trespass and (2) entry by invitation but with an undisclosed criminal intent. Under the former statute, the jury would be required to agree only that the defendant invaded a possessory right when entering the place in question, and therefore it would be possible for the jury to convict even if some jurors thought that the defendant entered by trespassing while others thought that he entered by invitation but with an undisclosed criminal intent. Under the latter statute, by contrast, the jury would have to agree either that he trespassed or that he entered by invitation but with an undisclosed criminal intent.

This requirement of unanimity would be of some practical value only if the evidence in a case pointed to both possibilities, and in a great many cases that will not be so. In cases prosecuted under the California burglary statute, I suspect, the evidence generally points either to a trespassory entry, typically involving breaking into a building or other covered place, or to an entry by invitation but with an undisclosed criminal intent (in many cases, shop-

lifting). Cases in which the evidence suggests that the defendant might have done either are probably not common. And in cases where there is evidence supporting both theories, the presence of a divisible statute containing alternative elements will not solve the problem: A guilty verdict will not reveal the alternative on which the jury agreed unless the jury was asked to return a special verdict, something that is not generally favored in criminal cases. See 6 LaFave §24.10(a), at 543–544.

In cases that end with a guilty plea—and most do—the benefit of divisibility is even less. A judge who accepts a guilty plea is typically required to confirm that there is a factual basis for the plea, see 5 *id.*, §21.4(f), at 835–840 (3d ed. 2007 and Supp. 2011–2012), and the proffer of a factual basis will generally focus exclusively on one of the alternative elements.

The Court nevertheless suggests that the extra modicum of assurance provided in cases involving divisible statutes is needed to prevent violations of the Sixth Amendment jury trial right, *ante,* at 13–15, but I disagree. So long as a judge applying ACCA is determining, not what the defendant did when the burglary in question was committed, but what the jury in that case necessarily found or what the defendant, in pleading guilty, necessarily admitted, the jury trial right is not infringed. See *Almendarez-Torres* v. *United States*, 523 U. S. 224 (1998). When the modified categorical approach is used to decide whether "a jury was actually required to find all the elements of [a] generic [offense]," the defendant has already enjoyed his Sixth Amendment right to a jury determination of those elements. *Taylor*, 495 U. S., at 602.

## III

While producing very modest benefits at most, the Court's holding will create several serious problems.

A

Determining whether a statute is divisible will often be harder than the Court acknowledges. What I have said about the statutes involved in *Shepard* and *Johnson* illustrates this point. The Court assumes that those statutes were divisible, but as I have explained, it is possible that they were not. See *supra,* at 5–7.

To determine whether a statute contains alternative elements, as opposed to merely alternative means of satisfying an element, a court called upon to apply ACCA will be required to look beyond the text of the statute, which may be deceptive. Take, for example, Michigan Compiled Laws Annotated §750.82(1) (West 2004), which criminalizes assault with "a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon." The Court seems to assume that a statute like this enumerates alternative elements, *ante,* at 17–18, but the Michigan courts have held otherwise. Under Michigan law, the elements of §750.82(1) are "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People* v. *Avant*, 235 Mich. App. 499, 505, 597 N. W. 2d 864, 869 (1999). Although the statute lists numerous types of weapons, the particular type of weapon is not itself an element that the prosecution must prove beyond a reasonable doubt. Instead, the list of weapons in the statute merely enumerates alternative means of committing the crime.[3]

Even if a federal court applying ACCA discovers a state-

---

[3] The board game Clue, to which the Court refers, see *ante*, at 18, does not provide sound legal guidance. In that game, it matters whether Colonel Mustard bashed in the victim's head with a candlestick, wrench, or lead pipe. But in real life, the colonel would almost certainly not escape conviction simply because the jury was unable to agree on the particular type of blunt instrument that he used to commit the murder.

court decision holding that a particular fact must be alleged in a charging document, its research is not at an end. Charging documents must generally include factual allegations that go beyond the bare elements of the crime—specifically, at least enough detail to permit the defendant to mount a defense. See 5 LaFave §19.3(b), at 276. And some jurisdictions require fairly specific factual allegations. See, *e.g.,* N. Y. Crim. Proc. Law Ann. §200.50 (West 2007) (enumerating detailed requirements for indictment); *People* v. *Swanson*, 308 Ill. App. 3d 708, 712, 721 N. E. 2d 630, 633 (1999) (vacating conviction for disorderly conduct for submitting a false police report because information "d[id] not describe with particularity the time, date, or location of the alleged domestic battery and the acts comprising the battery . . . [or] the statement that was falsely reported"); *Edwards* v. *State*, 379 So. 2d 336, 338 (Ala. Crim. App. 1979) (it is insufficient for an indictment for robbery to allege the amount of money taken; it "must aver the denomination of the money taken or that the particular denomination is unknown to the grand jury"). Thus, the mere fact that state law requires a particular fact to be alleged in a charging document does not mean that this fact must be found by a jury or admitted by the defendant.

The only way to be sure whether particular items are alternative elements or simply alternative means of satisfying an element may be to find cases concerning the correctness of jury instructions that treat the items one way or the other. And such cases may not arise frequently. One of the Court's reasons for adopting the modified categorical approach was to simplify the work of ACCA courts, see *Shepard*, 544 U. S., at 20; *Taylor,* 495 U. S., at 601, but the Court's holding today will not serve that end.

## B

The Court's holding will also frustrate fundamental

ACCA objectives. We have repeatedly recognized that Congress enacted ACCA to ensure (1) that violent, dangerous recidivists would be subject to enhanced penalties and (2) that those enhanced penalties would be applied uniformly, regardless of state-law variations. See, *e.g., id.*, at 587–589. See also *id.*, at 582 ("'[I]n terms of fundamental fairness, the Act should ensure, to the extent that it is consistent with the prerogatives of the States in defining their own offenses, that the same type of conduct is punishable on the Federal level in all cases'" (quoting S. Rep. No. 98–190, p. 20 (1983)); 495 U. S., at 591 (rejecting disparate results across states based on label given by State to a particular crime).

The Court's holding will hamper the achievement of these objectives by artificially limiting ACCA's reach and treating similar convictions differently based solely on the vagaries of state law. Defendants convicted of the elements of generic burglary in California will not be subject to ACCA, but defendants who engage in exactly the same behavior in, say, Virginia, will fall within ACCA's reach. See Va. Code Ann. §18.2–90 (Lexis 2009).

I would avoid these problems by applying the modified categorical approach to §459—and any other similar burglary statute from another State—and would ask whether the relevant portions of the state record clearly show that the jury necessarily found, or the defendant necessarily admitted, the elements of generic burglary. If the state-court record is inconclusive, then the conviction should not count. But where the record is clear, I see no reason for granting a special dispensation.

## IV

When the modified categorical approach is applied to petitioner's conviction, it is clear that he "necessarily admitted"—and therefore was convicted for committing— the elements of generic burglary: the unlawful or unprivi-

leged entry of a building with the intent to commit a crime.

Both the complaint and information alleged that petitioner "unlawfully and feloniously enter[ed]" a building (the "CentroMart") "with the intent to commit theft therein." App. 14a–17a. When the trial court inquired into the factual basis for petitioner's plea, the prosecutor stated that petitioner's crime involved "the breaking and entering of a grocery store." *Id.*, at 25a. Neither petitioner nor his attorney voiced any objection.[4] *Ibid.* In order to accept petitioner's plea, the trial court was required under California law to ensure that the plea had a factual basis, see Cal. Penal Code Ann. §1192.5 (1978); App. 26a, and we must presume that the plea proceedings were conducted in a regular manner, see *Parke* v. *Raley*, 506 U. S. 20, 29–30 (1992). The unmistakable inference arising from the plea transcript is that the trial judge—quite reasonably—understood petitioner and his attorney to assent to the factual basis provided by the prosecutor. Both the District Court and the Court of Appeals concluded that petitioner had admitted and, as a practical matter, was convicted for having committed the elements of generic burglary, and we did not agree to review that fact-bound determination, see 567 U. S. \_\_\_ (2012) (granting certiorari "limited to Question 1 presented by the petition").

Even if that determination is reviewed, however, the lower courts' conclusion should be sustained. Under the California burglary statute, as interpreted by the State

——————

[4] The Ninth Circuit has held that a court applying the modified categorical approach may rely on a prosecutor's statement as to the factual basis for a guilty plea when that statement is offered on the record in the defendant's presence and the defendant does not object. *United States* v. *Hernandez-Hernandez*, 431 F. 3d 1212, 1219 (2005). Petitioner has not challenged the Ninth Circuit's rule, and that issue is not within the scope of the question on which we granted certiorari. Accordingly, I would apply it for purposes of this case.

Supreme Court, a defendant must either (a) commit a trespass in entering the location in question or (b) enter in violation of some other possessory right. See *People* v. *Gauze*, 15 Cal. 3d 709, 713–714, 542 P. 2d 1365, 1367 (1975).[5]

In this case, the judge who accepted petitioner's guilty plea must have relied on petitioner's implicit admission that he "broke" into the store, for if petitioner had admitted only that he entered the store, the judge would not have been able to assess whether he had invaded a possessory right. Nor would an admission to merely "entering" the store have permitted the judge to assess whether petitioner entered with the intent to commit a crime; petitioner's admission to "breaking" was therefore critical to that element, as well. Cf. Black's Law Dictionary 236 (rev. 4th ed. 1968) ("Breaking" denotes the "tearing away or removal of any part of a house or of the locks, latches, or other fastenings intended to secure it, or otherwise exerting force to gain an entrance, with the intent to commit a felony").

We have explained that burglary under §924(e) means "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor*, 495 U. S., at 598. Based on petitioner's guilty plea and the *Shepard* documents, it is clear that petitioner necessarily admitted the elements of generic burglary. He unlawfully entered a building with the intent to commit a crime. Accordingly, I would hold that

———————

[5]The majority suggests that California law is ambiguous as to this requirement, see *ante,* at 20, n. 5, but any confusion appears to have arisen after petitioner's 1978 conviction and is therefore irrelevant for purposes of this case. Cf. *McNeill* v. *United States*, 563 U. S. ___, ___ (2011) (slip op., at 3) ("The only way to answer [ACCA's] backward-looking question [whether a previous conviction was for a serious drug offense] is to consult the law that applied at the time of that conviction").

petitioner's conviction under §459 qualifies as a conviction for "burglary" under §924(e).

For these reasons, I would affirm the decision of the Court of Appeals, and I therefore respectfully dissent.