**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

v.

FERNANDO ALBERTO VELASQUEZ-
BOSQUE,
            *Defendant-Appellee.*

No. 09-50126

D.C. No.
8:07-cr-00275-
JVS-1

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued March 2, 2010
Submitted April 8, 2010
Pasadena, California

Filed April 15, 2010

Before: William C. Canby, Jr., Ronald M. Gould and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

5637

## COUNSEL

Davina T. Chen, Deputy Federal Public Defender, Santa Ana, California, for defendant-appellant and cross-appellee Fernando Velasquez-Bosque.

Daniel B. Levin, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee and cross-appellant the United States of America.

## OPINION

IKUTA, Circuit Judge:

We are asked to decide whether carjacking under California Penal Code section 215 is a categorical crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii). We hold that it is, and we reverse.

I

Fernando Velasquez-Bosque was convicted of violating 8 U.S.C. § 1326, which makes it a crime for an alien who has

been removed from the United States to reenter the country. Velasquez-Bosque had a previous felony conviction for carjacking under California Penal Code section 215. At sentencing on the § 1326 conviction, the government urged the district court to increase Velasquez-Bosque's base offense level under the U.S. Sentencing Guidelines by sixteen-levels pursuant to § 2L1.2(b)(1)(A)(ii), which applies to defendants who were previously deported after being convicted of a felony that is a crime of violence. The government claimed that Velasquez-Bosque's carjacking conviction constituted a categorical crime of violence warranting the enhancement.

The district court declined to apply the enhancement. It determined that carjacking under section 215 was not a crime of violence for purposes of the Guidelines because it criminalized more conduct than the enumerated offenses listed in the relevant Guidelines' section, *see* § 2L1.2 cmt. n.1(B)(iii). The court sentenced Velasquez-Bosque to fifty-one months incarceration followed by three years of supervised release. The government timely appealed.[1] We have jurisdiction under 28 U.S.C. § 1291.

## II

We review de novo whether Velasquez-Bosque's prior conviction qualifies as a crime of violence under § 2L1.2 of the Guidelines, using the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575, 602 (1990). *United States v. Esparza-Herrera*, 557 F.3d 1019, 1021-22 (9th Cir. 2009) (per curiam).

### A

**[1]** Under the Guidelines, a defendant who has been con-

---

[1]Velasquez-Bosque cross-appealed the § 1326 conviction. We affirm that conviction in a memorandum disposition filed concurrently with this opinion.

victed of a crime of violence is eligible for increased criminal penalties. U.S.S.G. § 2L1.2(b)(1)(A). The Guidelines define "crime of violence" as:

> any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (2007).

[2] To determine whether a state offense meets the Guidelines' definition of a "crime of violence," the court compares the state statute of conviction with the federal generic definition of the same crime. *See Taylor*, 495 U.S. at 602. If the state statute criminalizes the same (or less) conduct as the generic crime, then the sentence enhancement applies to convictions for the state offense; if the state statute penalizes more conduct than the generic offense, however, the state offense is not categorically a crime of violence under § 2L1.2, and therefore the upward sentence enhancement for prior convictions of a crime of violence will not apply under the categorical approach. *See id.* at 599-600.

[3] The state offense at issue here is California Penal Code section 215(a), which defines carjacking as "[1] the felonious taking of a motor vehicle in the possession of another, [2] from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, [3] against his or her will and [4] with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, [5] accomplished by means of force or fear."

**[4]** Our analysis of whether section 215 is a "crime of violence" as defined in the Guidelines is largely controlled by our decision in *United States v. Becerril-Lopez*, 541 F.3d 881 (9th Cir. 2008). In that case, we considered whether California's definition of "robbery" under California Penal Code section 211 constituted a crime of violence under § 2L1.2. *Id.* at 885. California defines "robbery" as "[1] the felonious taking of personal property in the possession of another, [2] from his person or immediate presence, and [3] against his will, [4] accomplished by means of force or fear." Cal. Penal Code § 211. California defines "fear" under section 211 as including the fear of injury to property. *See* Cal. Penal Code § 212.[2] Applying the categorical approach under *Taylor*, we concluded in *Becerril-Lopez* that section 211 qualified as a generic crime of violence for purposes of the Guidelines. 541 F.3d at 893.

In reaching this conclusion, we compared section 211 with two crimes listed in the Application Note of the Guidelines as "crimes of violence": robbery and extortion. *Id.* at 891-92 (citing § 2L1.2 cmt. n.1(B)(iii)). We defined generic robbery as "aggravated larceny, containing at least the elements of misappropriation of property under circumstances involving immediate danger to the person." *Id.* at 891 (emphasis omitted) (adopting the Fifth Circuit's definition from *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 380 (5th Cir. 2006)). We determined that despite being a robbery offense, section 211 criminalized more conduct than generic robbery, because section 211 encompasses threats to property as well

---

[2]California Penal Code § 212 provides:

The fear mentioned in Section 211 may be either:

   1. The fear of an unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family; or,

   2. The fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery.

as to persons (as indicated in section 212's definition of "fear"), while generic robbery is limited to threats to persons. *Id.*

Notwithstanding section 211's additional element, we determined that our categorical analysis of section 211 could look beyond generic robbery and compare section 211 to generic extortion as well. *Id.* We reasoned that a state offense that criminalizes more conduct than generic robbery will still constitute a categorical crime of violence if the elements of the state offense that are not included in generic robbery qualify as elements of generic extortion. *Id.* at 891-92. According to *Becerril-Lopez*, the generic offenses of robbery and extortion may be combined under the *Taylor* categorical framework because of those crimes' historical relationship: extortion was "created in order to plug a loophole in the robbery law by covering sundry threats which will not do for robbery." *Id.* at 892 (quoting 3 Wayne R. LaFave, Substantive Criminal Law § 20.4(b) (2d ed. 2003) [hereinafter LaFave]).

Accordingly, *Becerril-Lopez* next considered whether the element in section 211 not included in generic robbery was included in the elements of generic extortion. *Id.* at 892-93. *Becerril-Lopez* defined generic extortion as "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats." 541 F.3d at 891-92 (quoting *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393, 409 (2003) (discussing the Hobbs Act, 18 U.S.C. § 1951(b)(2)); *see also United States v. Anderson*, 989 F.2d 310, 312-13 (9th Cir. 1993) (adopting the Hobbs Act definition as the generic federal offense of extortion in analyzing whether extortion is a crime of violence under the Armed Career Criminal Act). We determined that "[u]nlike robbery, the threats that can constitute extortion under the modern statutes include threats to harm property and to cause other unlawful injuries." *Becerril-Lopez*, 541 F.3d at 892.

In comparing section 211 to this definition of generic extortion, we noted a difference between the two: under the generic

definition of extortion, the defendant must obtain the property from another "with consent," while under section 211, the defendant must obtain property from a person "against the will" of that person. *Id.* at 892 n.9. We held that "[t]he 'with consent' element of generic extortion is not inconsistent with the 'against the will' element of a Cal. Penal Code § 211 conviction for a taking involving threats to property," *id.*, because "in spite of the different expressions, there is no difference here, for both crimes equally require that the defendant's threats induce the victim to give up his property, something which he would not otherwise have done," *id.* (quoting 3 LaFave § 20.4(b)). Accordingly, we concluded "that if a conviction under Cal. Penal Code § 211 involved a threat not encompassed by generic robbery, it would necessarily constitute generic extortion and therefore be a 'crime of violence' under U.S.S.G. § 2L1.2." *Id.* at 892.

**[5]** The analysis set forth in *Becerril-Lopez* guides our analysis of California Penal Code section 215, which is substantially similar to section 211 in all material respects. *See Nieves-Medrano v. Holder*, 590 F.3d 1057, 1058 (9th Cir. 2010) (order). Both section 215 and section 211 involve: [1] taking personal property in the possession of another person [2] from his or her immediate presence, [3] against that person's will, and [4] accomplished by means of force or fear. To the extent that the elements in section 211 are identical to those in section 215, *Becerril-Lopez* requires us to reach the conclusion that section 215 is also a crime of violence because it criminalizes the same or less conduct as the combination of generic robbery and generic extortion. *See United States v. Harris*, 572 F.3d 1065, 1066 (9th Cir. 2009) (per curiam) (relying on *Becerril-Lopez* to hold that a Nevada robbery statute was a crime of violence under U.S.S.G § 4B1.1, the career offender provision, on the basis that the Nevada statute was indistinguishable from California section 211).

B

Velasquez-Bosque attempts to distinguish *Becerril-Lopez* by focusing on the few differences between section 215 and

section 211. Velasquez-Bosque argues that each of these differences compels the conclusion that section 215 does not meet *Becerril-Lopez*'s combined definition of generic robbery and generic extortion, and that therefore section 215 is not a categorical crime of violence under the Guidelines. We analyze these arguments in turn.

1

**[6]** The primary distinction between section 215 and section 211 emphasized by Velasquez-Bosque is that California carjacking can be violated by a taking with the intent to "temporarily deprive the person" of the car, Cal. Penal Code § 215, while robbery in California requires the permanent deprivation of property, *see* Cal. Penal Code § 211; *California v. Scott*, 101 Cal. Rptr. 3d 875, 881 (Ct. App. 2009). Applying the *Taylor* categorical analysis to section 215, Velasquez-Bosque claims that neither generic robbery nor generic extortion may be accomplished by the temporary deprivation of property. Because section 215 criminalizes temporary takings, Velasquez-Bosque concludes that it criminalizes more conduct than the combination of generic robbery and extortion, and therefore section 215 does not constitute a crime of violence. For the same reason, Velasquez-Bosque contends that *Becerril-Lopez* is not controlling here.

**[7]** We disagree with this argument's premise, which assumes that generic robbery and generic extortion include the element of a permanent taking of property. Velasquez-Bosque does not identify any case holding that generic robbery includes such an element, and our case law points in the opposite direction. *Becerril-Lopez* defined generic robbery as a form of larceny, 541 F.3d at 891, and we equate larceny with generic theft for purposes of a categorical analysis. *See United States v. Corona-Sanchez*, 291 F.3d 1201, 1204 (9th Cir. 2002) (en banc) ("The contemporary crime of 'theft' stems from the common law crime of larceny." (alteration and internal quotation marks omitted)), *superceded on other*

*grounds by* U.S.S.G. § 2L1.2. Generic theft is "a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Id.* at 1205 (internal quotation marks omitted); *see also*, *e.g.*, *Verdugo-Gonzalez v. Holder*, 581 F.3d 1059, 1061 (9th Cir. 2009); *United States v. Vidal*, 504 F.3d 1072, 1077 (9th Cir. 2007) (en banc). This definition of generic theft has been adopted by the Supreme Court, *see Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007), and has also been adopted by other circuits that have defined the offense, *see Vidal*, 504 F.3d at 1077 n.6 (citing cases from the Second, Third, Seventh, and Tenth Circuits). Because generic robbery is a theft offense, we conclude it does not include the element that the stolen property be taken permanently.

**[8]** Nor does generic extortion, as defined in *Becerril-Lopez*, contain any requirement that property be taken permanently. *See* 541 F.3d at 891-92. Nevertheless, Velasquez-Bosque argues that *Scheidler*, 537 U.S. 393, and the Model Penal Code's definition of extortion require us to read this requirement into the statute. We disagree on both points.

In *Scheidler*, the Supreme Court held that anti-abortion protesters who took actions that interfered with or obstructed abortion clinics would not be guilty of extortion under the Hobbs Act because protesters did not "obtain" property from the clinics that "they could exercise, transfer, or sell." *Id.* at 405. Relying on *Scheidler*'s holding that extortion under the Hobbs Act requires physical acquisition of property, Velasquez-Bosque extrapolates that a person would not be guilty of extortion if property was acquired only temporarily. The district court based its decision not to apply the sentence enhancement on similar reasoning. Because the district court interpreted a "temporary taking [a]s . . . akin to an interference with the use of property," it surmised that, under *Scheidler*, a temporary deprivation of property was insufficient to constitute extortion.

We disagree that *Scheidler* reached or decided the issue before us. In holding that to "obtain" property under the Hobbs Act there must be more than mere interference with property, *id.*, the Supreme Court did not discuss whether the acquisition of property must be permanent. In fact, nothing in *Scheidler* suggests that the Court meant to restrict extortion under the Hobbs Act to permanent takings. Accordingly, the district court erred in relying on *Scheidler* to deny the enhancement, and Velasquez-Bosque's arguments on this point are inapposite.

Velasquez-Bosque also argues that we are bound by the Model Penal Code's definition of extortion, which he claims requires a permanent taking of property. The Model Penal Code defines extortion as "obtain[ing] property of another" by proscribed means, Model Penal Code § 223.4, and defines "obtain" as "bring[ing] about a transfer or purported transfer of a legal interest in the property," *id.* § 223.0(5). According to Velasquez-Bosque, because extortion requires that a legal interest be transferred, extortion cannot occur through the temporary taking of property.

We do not agree that the Model Penal Code provides a controlling definition of generic extortion. Our case law does not follow the Model Penal Code's definition of the word "obtain," which the Model Penal Code uses generally to insert the element of a permanent taking of property into all theft offenses containing that word, not just extortion. *See id.* §§ 223.2-223.9. As explained *supra* at page 5646-47, the Supreme Court does not define theft offenses as requiring a permanent taking of property. *See Duenas-Alvarez*, 549 U.S. at 189. Nor do we or other circuits. *See Verdugo-Gonzalez*, 581 F.3d at 1061; *Vidal*, 504 F.3d at 1077; *Corona-Sanchez*, 291 F.3d at 1204; *see also Jaggernauth v. U.S. Att'y Gen.*, 432 F.3d 1346, 1353 (11th Cir. 2005) (per curiam); *Nugent v. Ashcroft*, 367 F.3d 162, 174 (3d Cir. 2004); *United States v. Vasquez-Flores*, 265 F.3d 1122, 1125 (10th Cir. 2001); *Hernandez-Mancilla v. INS*, 246 F.3d 1002, 1009 (7th Cir.

2001). Given this rejection of the Model Penal Code's definition of "obtain" in the context of theft offenses, we see no reason to give it weight in defining extortion.

Because neither *Scheidler* nor the Model Penal Code requires us to define generic extortion as including the element of a permanent deprivation of property, we decline to do so here. This conclusion comports with that of other circuits to have considered whether the Hobbs Act permits temporary takings. *See United States v. Lewis*, 797 F.2d 358, 365 (7th Cir. 1986) ("Even a temporary loss of the use of money constitutes a deprivation of property under [the Hobbs Act]."); *United States v. Lance*, 536 F.2d 1065, 1068 (5th Cir. 1976) (under the Hobbs Act, "[t]he loss of the use of money, even temporarily, must be considered a deprivation of property").

Therefore, we conclude that section 215's express statement that it includes temporary takings does not cause it to criminalize more conduct than *Becerril-Lopez*'s combined definition of generic robbery and generic extortion.

2

**[9]** The second distinction between section 215 and section 211 raised by Velasquez-Bosque is that section 215 can be committed against an unconscious victim, whereas section 211 requires the victim to be conscious. *See People v. Hill*, 3 P.3d 898, 903 (Cal. 2000). Velasquez-Bosque relies on *Hill* to argue that an unconscious victim can be carjacked, and that the only force required for carjacking in California is therefore the force required to move a person. This force does not, according to Velasquez-Bosque, constitute the violent physical force required for a sentence enhancement under § 2L1.2, *see United States v. Grajeda*, 581 F.3d 1186, 1191 (9th Cir. 2009), and sets section 215 apart from robbery under section 211, which generally cannot be committed against an unconscious victim. *See, e.g.*, *People v. Kelley*, 269 Cal. Rptr. 900, 906 (Ct. App. 1990) (citing cases).

**[10]** Velasquez-Bosque's argument misreads the California Supreme Court's discussion of "force or fear" in *Hill*. *See* 3 P.3d at 901, 903. In that case, the defendant appealed his conviction for two counts each of kidnapping and carjacking following the forcible taking of a mother and her seven-month-old baby as they exited their car at their residence. Id. at 899. With the baby unbuckled from the car seat, the defendant accosted the mother and took her jewelry. *Id*. The defendant drove away with the mother and baby, and the mother was raped after being told to take her clothes off or the baby would be shot. *Id*. The California Supreme Court upheld the carjacking conviction as to the baby as well as the mother, even though the baby may not have been able to "apprehend any force used against her." *Id*. at 901.

**[11]** Contrary to Velasquez-Bosque's argument, *Hill* does not stand for the proposition that section 215 can be violated when violent force is neither used nor threatened. Instead, the California Supreme Court determined that a reasonable jury could have found that the force or fear "was directed at both" the mother and the baby. *Id*. Force and threatened force existed as to the baby because the defendant "snatched the baby as well [as] the mother," "threatened to shoot the baby" in order to coerce the mother's cooperation, and drove away with the baby rolling around in the front seat unbuckled from her car seat. *Id*. The California court upheld the conviction not because force or fear is not required to carjack a baby, but because the facts demonstrated that such force or fear was used. *Id*. at 903. Velasquez-Bosque's reliance on *Hill* to show that carjacking does not require the use or threatened use of violent physical force, and hence his argument that section 211 and section 215 can be distinguished on this basis, must therefore be rejected.[3]

---

[3]Because Velasquez-Bosque's theory does not distinguish the elements of section 215 from section 211, we remain bound by *Becerril-Lopez* and therefore do not reach Velasquez-Bosque's related arguments that generic robbery or generic extortion require victims to be conscious.

3

The third distinction between section 211 and section 215 raised by Velasquez-Bosque is that section 215 explicitly applies not only to the person who owns the car but also to any passengers in the car, which is language not included in section 211. Again, this in fact is not a difference between the statutes, because robbery in California does not require "that the victim have an absolute right to possession of the property," but rather also applies to persons who have "loose custody over the property [or are] currently exercising dominion over" the property. *California v. Hamilton*, 47 Cal. Rptr. 2d 343, 347 (Ct. App. 1995) ("As a rule, robbery may be committed against a person who is not the owner of property . . . ."); *see also People v. Coleman*, 53 Cal. Rptr. 3d 505, 509 (Ct. App. 2007) (explaining that the possession requirement in the carjacking statute is the same requirement as in the robbery statute). Accordingly, Velasquez-Bosque's attempt to avoid *Becerril-Lopez* on this ground is unavailing.

4

**[12]** Finally, Velasquez-Bosque asserts that section 215 differs from section 211 because section 215 does not permit a defense that the property was taken under a claim of right. *Cf. Becerril-Lopez*, 541 F.3d at 892-93. This is dispositive, Velasquez-Bosque claims, because generic robbery does permit a claim of right defense. Under the *Taylor* categorical approach, however, we "look only to the fact of conviction and the statutory definition of the prior offense" to determine whether the offense satisfies the generic definition. *Taylor*, 495 U.S. at 602; *see also United States v. Asberry*, 394 F.3d 712, 715 (9th Cir. 2005) ("Under the categorical approach, we consider only the statutory elements of the offense . . . ."). The availability of an affirmative defense is not relevant to the categorical analysis. *See United States v. Charles*, 581 F.3d 927, 935 (9th Cir. 2009) (declining to "expand the categorical approach analysis to incorporate widely accepted defenses"

and reiterating that the categorical approach compares only the elements of offenses). Velasquez-Bosque's argument is thus inapposite.[4]

### III

**[13]** We conclude that *Becerril-Lopez*, which held that section 211 was a crime of violence for purposes of § 2L1.2, controls our decision regarding section 215, which is materially identical. Velasquez-Bosque's efforts to distinguish section 215 from section 211 are unavailing. We therefore reverse the decision of the district court, and hold that section 215 is a crime of violence for purposes of § 2L1.2.[5]

**REVERSED and REMANDED.**

---

[4]Because of our decision that section 215 is a crime of violence under § 2L1.2 as a combination of generic robbery and generic extortion, we need not reach Velasquez-Bosque's argument that section 215 does not qualify as one of the other crimes enumerated in the Guidelines' definition of "crime of violence." Nor do we reach Velasquez-Bosque's statement, in passing, that section 215 criminalizes more conduct than generic robbery because the state offense can be accomplished through non-intentional force. This argument was not coherently developed in the briefs on appeal. *See* Fed. R. App. P. 28(a)(9)(A); *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1182 (9th Cir. 2001); *United States v. Kimble*, 107 F.3d 712, 715 n.2 (9th Cir. 1997).

[5]In supplemental briefing, the government argues that the reasoning of *Nieves-Medrano*, which held that the California carjacking statute at issue here was a crime of violence for immigration purposes under 18 U.S.C. § 16, compels the holding that California carjacking is a § 2L1.2 crime of violence as well. Because we reach the same conclusion through the categorical analysis, we do not address this alternative theory.