**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. ROGELIO SANCHEZ MOLINAR, *Defendant-Appellant.* | No. 15-10430 D.C. No. 4:14-cr-01069-JAS-BGM-1 ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the District of Arizona
James Alan Soto, District Judge, Presiding

Argued and Submitted September 14, 2016
San Francisco, California

Filed November 29, 2017
Amended February 5, 2018

Before: William A. Fletcher, Morgan B. Christen,
and Michelle T. Friedland, Circuit Judges.

Order;
Opinion by Judge Friedland;
Dissent by Judge W. Fletcher

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court's imposition of a sentencing enhancement based on the defendant's prior Arizona conviction for attempted armed robbery, which the district court treated as a "crime of violence" under the U.S. Sentencing Guidelines.

The panel wrote that this court's conclusion in *United States v. Taylor*, 529 F.3d 1232 (9th Cir. 2008), that Arizona armed robbery is a crime of violence under USSG § 4B1.2's force clause, is clearly irreconcilable with the Supreme Court's decision in *Johnson v. United States*, 559 U.S. 133 (2010), and has therefore been effectively overruled. The panel concluded that Arizona armed robbery can no longer be considered a categorical crime of violence under Section 4B1.2's force clause.

The panel held that Arizona robbery (and thus armed robbery) is a categorical match to generic robbery, and that Arizona attempt is equivalent to generic attempt, so the defendant's conviction does constitute a crime of violence under Section 4B1.2's enumerated felonies clause.

Dissenting, Judge Fletcher wrote that under the plain-meaning understanding of "immediate danger to the person," the circumstances in *State v. Moore*, 2014 WL 4103951 (Ariz. Ct. App.), did not involve such danger, and that

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Arizona's definition of robbery is therefore broader than the generic definition and is not a categorical match to generic robbery.

## COUNSEL

J. Ryan Moore (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Tucson, Arizona; for Defendant-Appellant.

Robert Lally Miskell (argued), Appellate Chief; United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

## ORDER

The opinion filed on November 29, 2017, and appearing at 876 F.3d 953, is hereby amended as follows: On page 960, note 8, the citation "*Commonwealth v. Zangari*, 42 Mass.App.Ct. 931, 677 N.E.2d 702, 703 (1997) ("[W]here the snatching or sudden taking of property from a victim is sufficient to produce awareness, there is sufficient evidence of force to permit a finding of robbery.") (quoting *Commonwealth v. Davis*, 7 Mass.App.Ct. 9,385 N.E.2d 278, 279 (1979));" is deleted. In addition, on page 964, in the dissent, "*see also United States v. Parnell*, 818 F.3d 974, 982 (9th Cir. 2016) (Watford, J., concurring) (noting that at common law, "[t]o commit robbery, the defendant also had to use violence or intimidation to coerce the victim into parting with his property")" is added after "*Santiesteban-Hernandez*, 469 F.3d at 830 ("The immediate danger element is what makes robbery deserving of great

punishment than that provided for larceny." (internal quotation marks omitted))".

With the foregoing amendments, Judge Friedland and Judge Christen vote to deny the petitions for panel rehearing and rehearing en banc, and Judge Fletcher votes to grant the petitions. Appellant's petition for panel rehearing, filed December 12, 2017, is **DENIED**. The full court has been advised of the petition for rehearing en banc, and no judge requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petition for rehearing en banc, filed the same date, is **DENIED**. No future petitions shall be entertained.

---

## OPINION

FRIEDLAND, Circuit Judge:

Rogelio Sanchez Molinar challenges the district court's imposition of a sentencing enhancement based on his prior Arizona conviction for attempted armed robbery, which the court treated as a "crime of violence" under the U.S. Sentencing Guidelines Manual ("USSG" or "Guidelines"). We previously decided in *United States v. Taylor*, 529 F.3d 1232 (9th Cir. 2008), that Arizona attempted armed robbery should be considered a crime of violence under the relevant Guidelines provision. *Id.* at 1238. But we must now reexamine that holding in light of the Supreme Court's decision in *Johnson v. United States*, 559 U.S. 133 (2010), which construed a similarly worded crime-of-violence provision in the Armed Career Criminal Act ("ACCA"). *Id.* at 140. Although *Johnson* does require us to depart from some of our analysis in *Taylor*, we conclude that Arizona attempted armed robbery nonetheless qualifies as a crime of

violence for reasons other than those relied upon in *Taylor*. Accordingly, we affirm.**[1]**

## I. BACKGROUND

Molinar pled guilty to federal charges for being a felon in possession of ammunition. Among other prior felonies, Molinar had previously been convicted of attempted armed robbery under Arizona law.

In sentencing Molinar for the ammunition convictions, the district court applied the firearms guideline, which included an enhancement if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence." U.S. SENTENCING GUIDELINES MANUAL § 2K2.1(a)(4)(A) (U.S. SENTENCING COMM'N 2014).**[2]** The guideline defined "crime of violence" by cross-referencing Section 4B1.2(a) and Application Note 1 of the Commentary to Section 4B1.2. USSG § 2K2.1 cmt. n.1. At the time, Section 4B1.2(a) read as follows:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical

---

**[1]** We resolve Molinar's other challenges to his sentence in a concurrently filed memorandum disposition.

**[2]** The 2014 version of the Guidelines was in effect at the time of Molinar's sentencing. Accordingly, all references to the Guidelines are to the 2014 version unless otherwise stated.

force against the person of another [*known as the "force clause" or the "elements clause"*], or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives [*known as the "enumerated felonies clause"*], or otherwise involves conduct that presents a serious potential risk of physical injury to another [*known as the "residual clause"*].

*Id.* § 4B1.2(a).

Application Note 1 to Section 4B1.2 ("Note 1") stated that "'[c]rime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling," as well as "attempting to commit" a crime of violence. USSG § 4B1.2 cmt. n.1.

The district court held that Molinar's prior Arizona conviction for attempted armed robbery qualified as a crime of violence, triggering the enhancement in Section 2K2.1(a)(4)(A). The resulting sentencing range was 46 to 57 months, and the district court imposed a sentence of 44 months. Without the crime of violence enhancement, Molinar's sentencing range would have been 27 to 33 months.

Molinar appealed, arguing that the district court erred in treating his Arizona conviction as a crime of violence.

## II. ANALYSIS

We use the categorical approach to determine whether a state crime qualifies as a crime of violence for Guidelines purposes. *See United States v. Rendon-Duarte*, 490 F.3d 1142, 1146 (9th Cir. 2007). Under that approach, we look "only to the fact of conviction and the statutory definition of the prior offense," not to the defendant's actions underlying the conviction. *United States v. Gomez-Hernandez*, 680 F.3d 1171, 1174 (9th Cir. 2012) (quoting *United States v. Espinoza-Cano*, 456 F.3d 1126, 1131 (9th Cir. 2006)). "State cases that examine the outer contours of the conduct criminalized by the state statute are particularly important because 'we must presume that the conviction rested upon [nothing] more than the least of th[e] acts criminalized.'" *United States v. Strickland*, 860 F.3d 1224, 1226–27 (9th Cir. 2017) (alterations in original) (quoting *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013)). Applying the categorical approach here, we conclude that Arizona attempted armed robbery is a crime of violence, but for reasons different than those we relied upon in *United States v. Taylor*, 529 F.3d 1232 (9th Cir. 2008).

### A. Effect of *Johnson* on *Taylor*'s "Crime of Violence" Holding

We held in *Taylor* that Arizona attempted armed robbery was a crime of violence for Guidelines purposes. *Id.* at 1237–38. Based solely on the text of Arizona's armed robbery statute, we concluded that "[a]rmed robbery under Arizona law involves the threat or use of force; therefore, that offense is a crime of violence pursuant to" the force clause of Section 4B1.2(a)(1). *Id.* at 1237. Molinar contends that the Supreme Court's intervening decision in *Johnson v. United States*, 559 U.S. 133 (2010), is clearly irreconcilable with our crime of violence holding in *Taylor* and urges us to

treat *Taylor* as "effectively overruled." *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc). We thus evaluate whether *Taylor*'s determination that Arizona attempted armed robbery is a crime of violence under Section 4B1.2's force clause survived *Johnson*. We hold that it did not.

The Supreme Court in *Johnson* analyzed the ACCA's "violent felony" definition. The Court evaluated whether the term "physical force" in that definition was synonymous with the understanding of "force" under the common law and held that it was not. For common-law battery, the force element is "satisfied by even the slightest offensive touching." *See Johnson*, 559 U.S. at 138–41. By contrast, the Court "th[ought] it clear that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140; *see also id.* (discussing similar conclusion reached in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), about the statutory definition of "crime of violence" in 18 U.S.C. § 16).

We have applied *Johnson*'s definition of force in analyzing whether an offense constitutes a crime of violence under the force clause of Section 4B1.2 of the Guidelines.[3]

---

[3] Recent Supreme Court decisions striking down the ACCA's residual clause, *see Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015), but upholding the Guidelines' residual clause, *see Beckles v. United States*, 137 S. Ct. 886, 892 (2017), together with an amendment to the Guidelines' enumerated felonies clause, *see infra* section II.B.1, have resulted in material differences between the two definitions that will likely limit our ability to treat the two as interchangeable in future cases. Those differences are not relevant to Molinar's arguments about whether *Taylor* remains good law after *Johnson*, however, because the force clauses in the ACCA and the Guidelines remain identical.

*United States v. Tucker*, 641 F.3d 1110, 1117, 1124 (9th Cir. 2011); *accord Johnson*, 559 U.S. at 140 (discussing "crime of violence" and "violent felony" as equivalent terms). Thus, to qualify as a crime of violence under the force clause, an offense under state law—as interpreted by that state's courts—must punish only conduct involving violent force as defined in *Johnson*.

In light of *Johnson*, we must assess whether Arizona courts apply the armed robbery statute to punish conduct that does not involve violent force. Arizona's armed robbery statute provides:

> A person commits armed robbery if, in the course of committing robbery as defined in § 13-1902, such person or an accomplice:
>
> 1. Is armed with a deadly weapon or a simulated deadly weapon; or
>
> 2. Uses or threatens to use a deadly weapon or dangerous instrument or a simulated deadly weapon.

Ariz. Rev. Stat. § 13-1904(A). On its face, this statute does not require that the robber actually use or even threaten to use a weapon. Arizona courts have not imposed further requirements. *See State v. Snider*, 311 P.3d 656, 659 (Ariz. Ct. App. 2013) ("[Section] 13-1904(A)(1) does not require the use or threatened use of the weapon, only that a defendant is 'armed with a deadly weapon' during the commission of the crime."). Thus, merely possessing a fake gun during the commission of a robbery, even without mentioning it or brandishing it, would constitute armed robbery in Arizona.

Under the categorical approach, "we must presume that [Molinar's] conviction rested upon [nothing] more than the least of th[e] acts criminalized." *Strickland*, 860 F.3d at 1226-27 (second and third alterations in original) (quoting *Moncrieffe*, 133 S. Ct. at 1684). Because merely possessing a fake gun during a robbery is no more violent within the meaning of *Johnson* than robbery itself, armed robbery is indistinguishable from robbery for the purposes of the categorical analysis under the force clause. *See United States v. Parnell*, 818 F.3d 974, 978–80 (9th Cir. 2016). Our analysis therefore turns on whether Arizona robbery involves sufficient force under *Johnson*.

Arizona's robbery statute provides that "[a] person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property." Ariz. Rev. Stat. § 13-1902(A). The statute defines "force" as "any physical act directed against a person as a means of gaining control of property." Ariz. Rev. Stat. § 13-1901(1). This broad statutory definition of "force" has not been narrowed by Arizona courts, other than by clarifying that the force must be "intended to overpower the party robbed." *State v. Bishop*, 698 P.2d 1240, 1243 (Ariz. 1985); *see also State v. Garza Rodriguez*, 791 P.2d 633, 637 (Ariz. 1990).

Arizona courts have not required this "overpowering" force to be violent in the sense discussed by the Supreme Court in *Johnson*. In *Lear v. State*, 6 P.2d 426 (Ariz. 1931), a foundational robbery case, the Arizona Supreme Court held that simply snatching an article from a person's hand or "surreptitiously tak[ing] from another's pocket" is not

robbery.**[4]**  *Id.* at 427 (quoting *State v. Parsons*, 87 P. 349, 350 (Wash. 1906)).  But the court observed that "if the article is so attached to the person or clothes as to create resistance however slight," the offense becomes robbery.  *Id.* (quoting JOEL PRENTISS BISHOP, 2 BISHOP ON CRIMINAL LAW 864 § 1167 (John M. Zane & Carl Zollmann, eds., 9th ed. 1923)); *see also id.* ("The snatching [of] a thing is not considered a taking by force, but if there be a struggle to keep it, . . . the taking is robbery . . . ." (quoting FRANCIS WHARTON, 2 A TREATISE ON CRIMINAL LAW 1297 § 1089 (11th ed. 1912)).

Consistent with *Lear*'s analysis of force, in *State v. Moore*, No. 1 CA-CR 13-0649, 2014 WL 4103951 (Ariz. Ct. App. Aug. 14, 2014) (unpublished), the Arizona Court of Appeals affirmed a robbery conviction that involved only a minor struggle.  In that case, the defendant reached through a car window to grab the wallet of the driver, who was an undercover police officer.  *Id.* at *1.  "The officer resisted and tightened his grip on the wallet, but [the defendant] wrested control of it away from him.  As a result of what the officer called a 'struggle,' the officer's arm 'flew back.'"  *Id.* The officer testified that the defendant had to "yank" and "pull" to take the wallet from his hand.  *Id.* at *2.  Citing *Lear*, the Arizona Court of Appeals held that "although the force [the defendant] used was not extreme or particularly violent, it was sufficient to constitute a 'physical act directed against [the officer] as a means of gaining control of [the wallet].'"  *Id.* (second and third alterations in original) (quoting Ariz. Rev. Stat. § 13-1901(1) and citing *Bauer v.*

---

**[4]** Although *Lear* interpreted an earlier version of Arizona's robbery statute, Arizona courts continue to rely on *Lear*'s analysis of the force required for robbery when interpreting the current statute.  *See, e.g.*, *Bishop*, 698 P.2d at 1243; *State v. Rodriguez*, 609 P.2d 589, 590 (Ariz. Ct. App. 1980).

*State*, 43 P.2d 203, 205 (1935) ("[E]ven though the snatching of a thing is not looked upon as a taking by force, it is otherwise where there is a struggle to keep it.")).

It is clear from these cases that Arizona punishes as robbery conduct that does not involve violent force. The level of force involved in grabbing the wallet in *Moore*, where the victim was not harmed, is similar to the level of force we have considered insufficiently violent to qualify as force under *Johnson*. In *United States v. Dominguez-Maroyoqui*, 748 F.3d 918 (9th Cir. 2014), for example, we explained that bumping into or jolting someone, grabbing a jacket, or spitting in a victim's face did not rise to the *Johnson* level of violent force. *Id.* at 921. Similarly, in *United States v. Flores-Cordero*, 723 F.3d 1085 (9th Cir. 2013), we held that a "minor scuffle" during which a defendant jerked her arms, kicked, and struggled to keep officers from placing her arms behind her back during an arrest was not *Johnson*-level violent force. *Id.* at 1087–88 (citing *State v. Lee*, 176 P.3d 712 (Ariz. Ct. App. 2008)). Under these precedents, a conviction for robbery—or armed robbery—in Arizona does not require the threat or use of *Johnson*-level force.

As a result, our conclusion in *Taylor* that Arizona armed robbery is a crime of violence under Section 4B1.2's force clause, *see* 529 F.3d at 1237, is clearly irreconcilable with the Supreme Court's decision in *Johnson*. We therefore treat this part of *Taylor* "as having been effectively overruled." *See Miller*, 335 F.3d at 900. And we hold that Arizona armed robbery can no longer be considered a categorical crime of violence under Section 4B1.2's force clause.

## B. Enumerated Crimes of Violence
## Under the Guidelines

Having concluded that Arizona armed robbery is not a crime of violence under Section 4B1.2's force clause, we now turn to whether it qualifies as a crime of violence under a different clause. At the time Molinar was sentenced, robbery was enumerated in the commentary to Section 4B1.2. We have held that robbery is an enumerated crime of violence. *See United States v. Barragan*, 871 F.3d 689, 713–14 (9th Cir. 2017) (citing the commentary to Section 4B1.2). We must now determine whether a conviction for robbery under Arizona law is equivalent to generic robbery, such that Arizona Robbery is a crime of violence under the enumerated felonies clause. We conclude that Arizona Robbery (and thus armed robbery) is a categorical match to generic robbery, and that Arizona attempt is equivalent to generic attempt, so Molinar's conviction does constitute a crime of violence for purposes of Section 4B1.2.

Under the categorical approach, when an offense is enumerated, we "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). The state crime is a match only if its "elements are the same as, or narrower than, those of the generic offense." *Id.*

We have defined generic robbery as "aggravated larceny, containing at least the elements of misappropriation of property under circumstances involving immediate danger to the person." *United States v. Becerril-Lopez*, 541 F.3d 881, 891 (9th Cir. 2008) (quoting *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 380 (5th Cir. 2006), *abrogated on other grounds by United States v. Rodriguez,*

711 F.3d 541 (5th Cir. 2013) (en banc)); *see also United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016) (adopting same generic definition). We have not previously examined the meaning of "immediate danger to the person" in depth, so we must do so now.

Our precedent dictates that in interpreting generic definitions of common-law crimes such as robbery, we adopt the "contemporary meaning employed by most states, guided by scholarly commentary." *See United States v. Esparza-Herrera*, 557 F.3d 1019, 1023 (9th Cir. 2009) (quoting *United States v. Gomez-Leon,* 545 F.3d 777, 790 (9th Cir. 2008)). The majority of states implement the notion of immediate danger to the person by "requir[ing] property to be taken from a person or a person's presence by means of force or putting in fear."**[5]** *See Santiesteban-Hernandez*, 469 F.3d at 380 (collecting state statutes and citing WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 20.3 (2d ed. 2003)). Thus, we hold that for a state crime to be equivalent to generic robbery, it must require property to be taken from a person or a person's presence by means of force or putting in fear.**[6]**

---

**[5]** The minority approach, also reflected in the Model Penal Code, requires bodily injury or the threat of or putting in fear of bodily injury. *Santiesteban-Hernandez*, 469 F.3d at 380; *see* MODEL PENAL CODE § 222.1.

**[6]** The dissent contends that we are abandoning *Becerril-Lopez*. We are not. *Becerril-Lopez* did not define "immediate danger" but used that phrase in describing the elements of generic robbery. Indeed, beyond stating that threats to a person's property do not suffice to constitute an immediate danger to the person, *Becerril-Lopez* said nothing else about how much danger to the person is required. *See* 541 F.3d at 891. We accordingly endeavor here to determine how much immediate danger generic robbery requires. As explained, the majority of states, and accordingly the scholarly commentary, treat the level of danger involved

As to how much force is needed to comport with this definition, we have held that force sufficient "to compel acquiescence to the taking of or escaping with the property" satisfies the generic definition of robbery, regardless of what degree of force that is in a particular instance. *United States v. Harris*, 572 F.3d 1065, 1066 (9th Cir. 2009) (quoting Nev. Rev. Stat. § 200.380) (holding that a statute stating "[t]he degree of force used is immaterial if it is used to compel acquiescence to the taking of or escaping with the property"

---

in jostling a victim as sufficient to satisfy the requirements of robbery. *See* WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 20.3 (2d ed. 2003); *see also* CHARLES E. TORCIA, 4 WHARTON'S CRIMINAL LAW § 464 (15th ed.). The dissent thinks that our recognition of this fact means we are contradicting *Becerril-Lopez* by defying the plain meaning of the phrase "immediate danger." But our task here, as it was in *Becerril-Lopez*, is to understand the requirements for generic robbery, not to define in the abstract words that have been used to describe the elements of generic robbery. Authoritative sources surveying state definitions of generic robbery indicate that it requires very little danger.

The dissent also cites *United States v. Tellez-Martinez*, 517 F.3d 813 (5th Cir. 2008), to argue that we have required a stronger showing of immediate danger than the Fifth Circuit has. In *Tellez-Martinez*, the Fifth Circuit interpreted the California robbery statute at issue in *Becerril-Lopez* and concluded that California robbery is a categorical match to generic robbery. *Id.* at 815. Specifically, the Fifth Circuit reasoned that the California robbery statute required an immediate danger to the person because "danger is inherent in the criminal act. . . . even when the statue is violated by placing the victim in fear of injury to property." *Id.* In *Becerril-Lopez*, we disagreed with this interpretation of California robbery, noting that the statute "does not imply any force or threat of force against the person" and therefore does not require an immediate danger to the person. 541 F.3d at 891 n.8. That we and the Fifth Circuit disagree on what is outlawed by the California robbery statute in no way suggests a disagreement on the definition of generic robbery, or how much immediate danger to the person it requires.

satisfied the generic definition of robbery).[7]  This accords
with the definition of robbery in a majority of states, which
require no more force than the jostling of the victim.[8]  *See*
LAFAVE, *supra*, at § 20.3(d)(1) (explaining that
pickpocketing or sudden snatching of a purse where the
victim does not have the chance to resist is not robbery, but
if the victim struggles for control of the purse or if the robber
"jostles" or renders the victim "helpless by more subtle
means," then the force is sufficient for robbery); CHARLES
E. TORCIA, 4 WHARTON'S CRIMINAL LAW § 464 (15th ed.)
("It is likewise robbery to pick a person's pocket while
scuffling with him, or while jostling, pushing, or crowding
him." (footnotes omitted)).  There is no indication that the
Supreme Court's definition of "violent force" in *Johnson*—
a product of specific statutory interpretation—should apply

---

[7] The dissent points out that *Harris* is a two-paragraph per curiam
opinion, but our published opinions are precedential regardless of length
or authorship.  *See Miller*, 335 F.3d at 899.  The dissent also argues
*Harris* did not contain "a holding with respect to the degree of force
required for generic robbery."  But as the dissent notes, *Harris* stated that
the Nevada robbery statute at issue was not distinguishable from the
California robbery statute analyzed in *Becerril Lopez* on the grounds that
the Nevada statute stated that "[t]he degree of force used is immaterial if
it is used to compel acquiescence to the taking of or escaping with the
property." *Harris*, 572 F.3d at 1066.  And *Harris* held that, even with
this phrase, the Nevada statute was a crime of violence because it was a
match for either generic robbery or generic extortion.  *Id.*  This was as
much a holding as any other because it was necessary to the disposition
of the case.

[8] *See, e.g.*, *Thomas v. State*, 737 A.2d 622, 639 (Md. Ct. Spec. App.
1999) (affirming conviction for attempted robbery where officer "felt a
tugging on his holster" and "was required to use force to prevent
appellant from taking the gun."); *People v. Davis*, 935 P.2d 79, 84-85
(Colo. App. 1996) ("[R]obbery includes the snatching of an object
attached to the person of another if force is used to tear or break the
attachment").

to the understanding of "force" in the definition of generic robbery. *See United States v. Mendoza-Padilla*, 833 F.3d 1156, 1158–59 (9th Cir. 2016) (analyzing elements of an enumerated offense without discussing *Johnson*). Indeed, enumerated offenses are crimes of violence even when their elements do not include the threat or use of violent force; this must be so, or the enumerated felonies clause would be surplusage. *See United States v. Pereira-Salmeron*, 337 F.3d 1148, 1152 (9th Cir. 2003).

As to the meaning of "fear" within the generic definition, a leading treatise teaches:

> [T]he word 'fear' in connection with robbery does not so much mean 'fright' as it means 'apprehension'; one too brave to be frightened may yet be apprehensive of bodily harm. The victim who is not apprehensive of harm from the robber so long as he does what the robber tells him to do, though he does expect harm if he refuses, is nevertheless 'put in fear' for purposes of robbery.

LAFAVE, *supra*, at § 20.3(d)(2) (footnotes omitted); *accord* TORCIA, *supra*, at § 462. Thus, "actual fright by the victim, without regard to the defendant's behavior calculated to produce such a reaction, is [not] alone determinative." LAFAVE, *supra*, at § 20.3(d)(2) (internal quotation marks omitted). And the defendant need not verbally threaten the victim with harm to put the victim in fear.

> Intimidation for purposes of a robbery statute may occur where a defendant approaches a victim and, using a threatening tone or threatening body language, makes demands of the victim. That is, the putting in fear may

be sustained by evidence of acts, words, or circumstances reasonably calculated to effect that result.

JILL GUSTAFSON & JEFFREY J. SHAMPO, 67 AM. JUR. 2D ROBBERY § 31 (2d ed. 2017) (footnotes omitted).

Applying those generic definitions of force and fear here, we conclude that Arizona robbery is coextensive with generic robbery. Again, the generic definition of robbery encompasses not only de minimis force sufficient to compel acquiescence to the taking of or escaping with property,[9] but also the implied threat of force. Although we think it is a close question, we do not understand Arizona's application of its robbery statute to sweep more broadly than that. To explain why, we turn again to *Moore*, as well as to two other cases, *State v. Yarbrough*, 638 P.2d 737 (Ariz. Ct. App. 1981), and *State v. Stevens*, 909 P.2d 478 (Ariz. Ct. App. 1995). These cases appear to represent the outer bounds of what conduct is considered robbery, whether accomplished by force or putting in fear, in Arizona.

In *Moore*, the defendant used enough force to wrest the officer's wallet away from him despite his resistance. *See Moore*, 2014 WL 4103951, at *1–2. Force sufficient to overcome resistance is enough to satisfy the generic definition of robbery. *See* LAFAVE, *supra*, at § 20.3(d)(1). We are therefore satisfied that the defendant's actions in *Moore* fell within that definition.

---

[9] The dissent contends that we treat all de minimis force as necessarily satisfying the definition of immediate danger to the person. We do not. Rather, we consider only de minimis force that is sufficient to compel acquiescence to the taking of or escaping with property.

In *Yarbrough*, the defendant entered a convenience store at night with a stocking over his head, ran behind the counter, and demanded money from the clerk with his left hand out of view. 638 P.2d at 738, 740. Even though no physical force was used or expressly threatened, taken together, the defendant's actions were reasonably calculated to, and in fact did, put the victim in fear. The conduct was therefore consistent with generic robbery. *See* GUSTAFSON & SHAMPO, *supra*, at § 31.

In *Stevens*, the defendant approached a stopped car, opened its door, and accused the driver of nearly hitting him. The driver did not recall any near accidents. The defendant's movements and words made the driver afraid that he might hurt her. He then bent down over the back of her seat, grabbed her purse from the rear seat, and fled. 909 P.2d at 479–80. The Arizona Court of Appeals held that "the jury could and did reasonably conclude [the defendant] intended to cause her to be so fearful and threatened that she would not, at the very least, resist his efforts to take her purse." *Id.* at 480.

It is a close question whether the conduct in *Stevens* satisfies the generic definition of robbery because the defendant never verbally threatened the victim and there was no struggle over the purse. But the defendant's conduct, including entering the confined space of the car, created the sort of face-to-face confrontation that inherently presents a risk of violence.[10] *See United States v. Prince*, 772 F.3d

---

[10] We note that the court in *Stevens* also stated that the victim believed the defendant "looked like an abusive person" and that this was part of what made her fearful. 909 P.2d at 479-80. To whatever extent the court treated as relevant a purely subjective reaction to the defendant's appearance, we do not rely on that reaction in our assessment

1173, 1178 (9th Cir. 2014); *United States v. Lewis*, 405 F.3d 511, 514 (7th Cir. 2005); *United States v. Hawkins*, 69 F.3d 11, 12–13 (5th Cir. 1995); *United States v. McVicar*, 907 F.2d 1, 2 (1st Cir. 1990), *abrogated on other grounds as recognized in United States v. Castro-Vasquez*, 802 F.3d 28 (1st Cir. 2015).    That leads us to conclude that the defendant's conduct was reasonably calculated to put the victim in fear and thus satisfies the generic definition of robbery.  *See* GUSTAFSON & SHAMPO, *supra*, at § 31.

Having considered these boundary cases, we conclude that Arizona robbery is coextensive with generic robbery and is thus a crime of violence under Section 4B1.2's enumerated felonies clause.  And, of course, armed robbery includes all the elements of robbery plus the additional element of being armed.  Ariz. Rev. Stat. § 13-1904.  Thus, anyone who has been convicted of armed robbery in Arizona will have been convicted of all of the elements of generic robbery.  As a result, we hold that Arizona armed robbery qualifies as a crime of violence under Section 4B1.2's enumerated felonies clause.

The only question that remains is whether Arizona *attempted* armed robbery also constitutes a crime of violence.  "An attempt to commit a crime of violence is itself a crime of violence." *United States v. Wenner*, 351 F.3d 969, 971–72 (9th Cir. 2003) (citing USSG § 4B1.2 cmt. n.1).  And we have already held in *Taylor* that Arizona attempt is coextensive with generic attempt.  *See Taylor*, 529 F.3d at 1238.    We are not persuaded that the state court cases Molinar cites regarding Arizona's definition of attempt

---

of whether the conduct amounted to generic robbery.  The defendant's actions were sufficient to create an objectively reasonable fear of harm, making it a match to generic robbery.

compel a different result. We thus remain bound by *Taylor*'s holding that Arizona attempt is a categorical match to generic attempt. *See Gomez-Hernandez*, 680 F.3d at 1175 ("[W]e are not aware of any subsequent Arizona decision deviating from the generic definition of attempt."); *see also United States v. Quintero-Junco*, 754 F.3d 746, 750 n.1 (9th Cir. 2014) (adhering to *Taylor*'s holding on attempt); *United States v. Gomez*, 757 F.3d 885, 899 n.10 (9th Cir. 2014) (same).

We therefore hold that Arizona attempted armed robbery qualifies as a crime of violence under Section 4B1.2's enumerated felonies clause.

## C. Molinar's Remaining Arguments

Molinar's remaining arguments against treating his prior conviction as a crime of violence are unavailing.

First, Molinar argues that because Arizona has abolished the "claim of right" defense to robbery, and because the defense is still available for the generic crime, Arizona "broadly penalizes conduct that would not constitute generic robbery." In *United States v. Velasquez-Bosque*, 601 F.3d 955 (9th Cir. 2010), we rejected this precise argument. *Id.* at 963. We reasoned that "[t]he availability of an affirmative defense [like the claim of right doctrine] is not relevant to the categorical analysis," because that analysis looks at the elements of the crimes being compared (here, the elements of Arizona robbery as compared to generic robbery), not the defenses to either. *Id.*

Second, Molinar argues that Arizona's statutory definition of "property" sweeps more broadly than the generic understanding of property because Arizona's property definition includes intangible things of value,

whereas the generic definition does not. But a person commits Arizona robbery only "if in the course of taking any property of another *from his person or immediate presence* and against his will, such person threatens or uses force against any person." Ariz. Rev. Stat. § 13-1902(A) (emphasis added). Molinar points to no case in which an Arizona robbery conviction was based on the taking of an intangible object, and given the elements of Arizona robbery, the very concept seems implausible. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (holding that there must be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition" to conclude that a state crime is overbroad). Accordingly, we conclude that Arizona's definition of property does not change the result of our categorical analysis of attempted armed robbery.

### III.    CONCLUSION

For the foregoing reasons, we hold that an Arizona conviction for attempted armed robbery is a crime of violence under Section 4B1.2's enumerated felonies clause. We therefore affirm the district court's imposition of the sentencing enhancement.

**AFFIRMED.**

W. FLETCHER, Circuit Judge, dissenting:

I respectfully dissent.

The majority concludes that "Arizona Robbery (and thus armed robbery) is a categorical match to generic robbery." Maj. Op. at 13. I disagree.

Under the law of our circuit, generic robbery requires that deprivation of property take place "under circumstances involving *immediate danger to the person*." *United States v. Becerril-Lopez*, 541 F.3d 881, 891 (9th Cir. 2008) (quoting *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 380 (5th Cir. 2006) (quoting 3 Wayne R. LaFave, *Substantive Criminal Law* § 20.3 intro., (d)(2) (2d ed. 2003) (brackets omitted and emphasis added))). Under Arizona law, a robbery occurred when an unarmed defendant reached through the open driver's-side window of a parked car and grabbed a wallet from the hand of a seated undercover police officer. *State v. Moore*, 2014 WL 4103951, ¶ 8 (Ariz. Ct. App.). There was a brief struggle for control of the wallet, and the arm of the officer "flew back" when the wallet was taken from his hand. *Id.* ¶ 2. Under a plain-meaning understanding of the phrase "immediate danger to the person," the circumstances in *Moore* did not involve such danger. Arizona's definition of robbery is therefore broader than the generic definition and is not a categorical match.

The majority defines generic robbery as requiring only force or fear. The majority writes, "Thus, we hold that for a state crime to be equivalent to generic robbery, it must require property to be taken from a person or a person's presence by means of force or putting in fear." Maj. Op. at 14. Citing the Fifth Circuit's opinion in *Santiesteban-Hernandez*, the majority contends that its definition of generic robbery matches the definition of robbery in most

states. *Id.* at 14 (quoting *Santiesteban-Hernandez*, 469 F.3d at 380). But *Santiesteban-Hernandez* does not support the majority. The Fifth Circuit did indeed survey the definitions of robbery in most states. But its definition of generic robbery does not match the majority's, for its definition does not include "force" as a required element. The Texas statute at issue in *Santiesteban-Hernandez* did not require the use of force or threat of force, but that did not matter to the Fifth Circuit. What mattered was that there be immediate danger. *See* Tex. Pen. Code Ann. § 29.02 (Vernon 2006) (requiring "bodily injury" or "fear of imminent bodily injury or death"); *Santiesteban-Hernandez*, 469 F.3d at 380 ("The immediate danger element is what makes robbery deserving of greater punishment than that provided for larceny." (internal quotation marks omitted)); *see also United States v. Parnell*, 818 F.3d 974, 982 (9th Cir. 2016) (Watford, J., concurring) (noting that at common law, "[t]o commit robbery, the defendant also had to use violence or intimidation to coerce the victim into parting with his property"). The Fifth Circuit held that there was a categorical match because "both [Texas and generic robbery] involve theft and immediate danger to a person." 469 F.3d at 381.

We have taken the "immediate danger" requirement even more seriously than the Fifth Circuit. In *United States v. Tellez-Martinez*, 517 F.3d 813 (5th Cir. 2008) (per curiam), a post-*Santiesteban-Hernandez* case, the Fifth Circuit held that California robbery is a categorical match to generic robbery, even though the California statute defines robbery as including theft accomplished by "fear of an immediate and *unlawful injury to the . . . property* of anyone in the company of the person robbed." *Id.* at 815 (emphasis added). Despite fear of injury to property being a sufficient basis for a robbery conviction, the Fifth Circuit concluded

that "danger is inherent in the criminal act" because the statute required the crime be committed "(1) directly against the victim or in his presence; and (2) against his will." *Id.* In *Becerril-Lopez*, we interpreted the very same California robbery statute and disagreed with the Fifth Circuit. We held that California robbery is not a categorical match for generic robbery because we were "unconvinced that a taking by threat to property necessarily entails dangers to the person." *Becerril-Lopez*, 541 F.3d at 891 n.8.

The majority uses "force" and "fear" in the disjunctive— that is, in its view there is generic robbery if property is taken by either force or fear. If either word, as defined by the majority, does not necessarily entail circumstances involving "immediate danger to the person," the majority's definition of generic robbery is broader than our definition of generic robbery in *Becerril-Lopez*. According to the majority, the words "force" and "fear" both "implement the notion of immediate danger." Maj. Op. at 14. As the majority defines the two words, this is not true.

The majority defines "force" by relying on our two-paragraph *per curiam* opinion in *United States v. Harris*, 572 F.3d 1065 (9th Cir. 2009). Citing *Harris*, the majority writes, "[W]e have held that force sufficient 'to compel acquiescence to the taking of or escaping with the property' satisfies the generic definition of robbery, regardless of what degree of force that is in a particular instance." Maj. Op. at 15. Our opinion in *Harris*, despite its brevity, states the law of the circuit. But it is not at all clear what *Harris* held with respect to force and generic robbery.

The question in *Harris* was whether, using the categorical approach, Nevada's robbery statute was a "crime of violence" within the meaning of U.S.S.G. § 4B1.2. We had held in *Becerril-Lopez*, using the categorical approach,

that California's robbery statute was a crime of violence.
Generic robbery and generic extortion are both crimes of
violence. The California statute was broader than either
generic robbery or generic extortion considered alone, but
was no broader than the combined elements of those two
generic crimes. *Becerril-Lopez*, 541 F.3d at 890–893. We
used the same approach in *Harris* to conclude that the
Nevada robbery statute was a crime of violence, based on the
combined elements of generic robbery and extortion. In the
only sentence in which we addressed force, we wrote:

> The Nevada statute's statement that "[t]he
> degree of force used is immaterial if it is used
> to compel acquiescence to the taking of or
> escaping with the property" also does not
> distinguish it from the California statute
> analyzed in *Becerril-Lopez*.

*Harris*, 572 F.3d at 1066.

This single sentence in *Harris* is, to say the least, opaque.
It is hardly a holding with respect to the degree of force
required for generic robbery. It is even less a holding that a
slight degree of force is enough to satisfy *Becerril-Lopez*'s
"immediate danger" requirement for generic robbery. The
three-judge panel in *Harris* was without authority to
abandon or modify the immediate danger requirement of
*Becerril-Lopez*, and the panel did not purport to do so. *See
United States v. Velasquez-Bosque*, 601 F.3d 955, 959, 963
(9th Cir. 2010) (describing *Harris* as "relying on *Becerril-
Lopez*" and holding that *Becerril-Lopez* still "controls our
decision"). Indeed, the panel in *Harris* nowhere mentioned
the immediate danger requirement.

According to the majority, even "de minimis force
sufficient to compel acquiescence to the taking of or

escaping with property" is enough "force" to satisfy the definition of generic robbery. Maj. Op. at 18. That is, in the view of the majority, de minimis force always necessarily entails circumstances involving the "immediate danger to the person" that is required by *Becerril-Lopez*. This is not true, as may be seen in *Moore*. De minimis force is even less than the force required to grab the wallet in *Moore*, and there was no "immediate danger" entailed by the circumstances involving the degree of force used in *Moore*. It follows that "immediate danger" is not necessarily created by the lesser degree of force that would satisfy the majority's definition. For the majority, even "jostling" is sufficient. *Id.* at 16. Under any plain-meaning understanding of the word, "jostling" does not necessarily entail circumstances involving "immediate danger to the person."

The majority defines "fear" by quoting from the second edition of Professor LaFave's treatise on criminal law. The majority writes:

> As to the meaning of "fear" within the generic definition, a leading treatise teaches:
>
>> [T]he word 'fear' in connection with robbery does not so much mean 'fright' as it means 'apprehension'; one too brave to be frightened may yet be apprehensive of bodily harm. The victim who is not apprehensive of harm from the robber so long as he does what the robber tells him to do, though he does expect harm if he refuses, is

> nevertheless 'put in fear' for
> purposes of the robbery.

> LaFave, [*Substantive Criminal Law*], at
> § 20.3(d)(2) (footnotes omitted).

Maj. Op. at 17.  So far as it goes, and for the purpose intended by Professor LaFave, this is a perfectly adequate definition of fear.  But "fear," thus defined, does not necessarily entail circumstances involving "immediate danger to the person."

Elsewhere in his treatise, in passages separate from his definition of fear, Professor LaFave insists that danger is a required element of robbery.  Based on these passages, the Fifth Circuit required "immediate danger."  It wrote in *Santiesteban-Hernandez*:

> Although the precise state definitions vary, the generic form of robbery "may be thought of as aggravated larceny," containing at least the elements of "misappropriation of property under circumstances *involving [immediate] danger to the person*."  Wayne R. LaFave, *Substantive Criminal Law* § 20.3 intro., (d)(2) (2d ed. 2003).

469 F.3d at 380 (emphasis added).  The Fifth Circuit's quotation from Professor LaFave is an amalgam.  The word "immediate" does not appear in the sentence written by Professor LaFave.  The Fifth Circuit took that word from § 20.3(d)(2) and inserted it into the sentence that appears in the introduction to § 20.3.  In *Becerril-Lopez*, we then took the phrase "immediate danger to the person," dropped the

brackets around "immediate," and made it the law of our circuit.

For the majority to be right that the elements of generic robbery are satisfied if property is taken through either "force" or "fear," both words, as defined by the majority, must necessarily entail "circumstances involving immediate danger to the person." The majority has defined force and fear so broadly that neither word necessarily entails such circumstances. "Force," for the majority, includes de minimis force and "jostling." "Fear," for the majority, includes the "apprehension" of harm, but only if the victim fails to cooperate. Neither word, so defined, necessarily entails "circumstances involving immediate danger to the person."

The majority effectively reads "immediate danger to the person" out of the definition of generic robbery. *Becerril-Lopez*, the source of the immediate danger requirement, may have been wrongly decided (though I do not think so). If so, the proper course for the panel is not to abandon it, but to make a *sua sponte* call for reconsideration by an en banc panel.